# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

———————

**TRANXITION, INC., a Delaware corporation**
*PLAINTIFF-APPELLANT*,

V.

**LENOVO (UNITED STATES), INC., a Delaware corporation,**
*DEFENDANT-APPELLEE*

**NOVELL, INC., a Delaware corporation,**
*DEFENDANT-APPELLEE*

———————

2015-1907, -1941, -1958

———————

Appeals from the United States District Court for the District of Oregon in Nos. 3:12-cv-01065-HZ and 3:12-cv-01404-HZ, Judge Marco A. Hernandez

———————

**APPELLANT'S CORRECTED OPENING BRIEF IN SUPPORT OF ITS APPEALS OF THE DISTRICT COURT'S ORDERS ON CLAIM CONTRUCTION AND ORDERS INVALIDATING THE PATENTS-IN-SUIT AS "ABSTRACT" PURSUANT TO SECTION 101 OF THE PATENT ACT**

———————

Dayna J. Christian
dayna.christian@immixlaw.com
Immix Law Group PC
121 S.W. Salmon Street, Suite 1000
Portland, OR  97204
Telephone: (503) 802-5533

Arthur S. Beeman
arthur.beeman@arentfox.com
Joel T. Muchmore
joel.muchmore@arentfox.com
Arent Fox LLP
55 2nd Street, 21th Floor
San Francisco, CA  94105
Telephone: (415) 757-5500

Attorneys for Appellant

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Lenovo (United States), Inc.
_____ Tranxition, Inc. _____ v. _____ and Novell, Inc. _____

## Nos. 15-1907, -1941, -1958

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

certifies the following (use "None" if applicable; use _Appellant, Tranxition, Inc._ extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:
Tranxition, Inc.

_____

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:  N/A

_____

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
Tranxition, Inc.

_____

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:


Arthur S. Beeman and Joel T. Muchmore, Arent Fox LLP
Dayna J. Christian, Immix Law Group, PC
_____


_____ November 18, 2015 _____          /s/ Arthur S. Beeman _____
Date                                        Signature of counsel
                                            Arthur S. Beeman _____
                                            Printed name of counsel

Please Note: All questions must be answered
cc: _All Counsel of Record (via E-mail) _____

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF RELATED CASES ........................................................1

II.   JURISDICTIONAL STATEMENT...............................................3

III.  STATEMENT OF THE ISSUES ...............................................4

IV.   STATEMENT OF THE CASE ...................................................6

V.    STATEMENT OF THE FACTS ...................................................8

VI.   SUMMARY OF THE ARGUMENT...................................11

VII.  ARGUMENT.........................................................................16

    A.    The District Court Erred In Construing Claim Terms, Leading To Its Numerous Errors In Its § 101 Analysis. ...................17

        1.    "Personality Object" ...................................................18

        2.    "Extraction plan" ......................................................19

        3.    "active configuration settings"...................................21

        4.    "value" ......................................................................22

        5.    "(transitioning or transitions) one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system" ......................................................22

        6.    "manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system".................................................................23

        7.    The Properly Construed Terms.................................24

    B.    On A Motion For Summary Judgment, The District Court Must Draw All Reasonable Inferences In Favor Of Tranxition As The Nonmoving Party. ...............................................................25

    C.    A Presumption Of Validity Applies To All Patents And May Only Be Overcome By Clear And Convincing Evidence.................26

i

# TABLE OF CONTENTS
## (continued)

Page

1.   § 282 Of The 1952 Patent Act Establishes That Patents "Shall Be Presumed Valid" And The "Burden Of Establishing Invalidity . . . Shall Rest On The Party Asserting It." ...................................................................26

2.   Binding Supreme Court Authority Establishes That The Statutory Presumption In Favor Of Validity May Only Be Overcome By Clear And Convincing Evidence. ...............27

3.   The District Court Erred In Finding That There Is No Longer A Presumption Of Validity Nor A Clear And Convincing Burden With Regard To Questions Of Patent Invalidity. ...................................................................28

D.   The District Court's Failure To Apply The Proper Legal Standards Resulted In Multiple Reversible Errors ...........................29

E.   The Current Status Of § 101 "Abstractness" Law. ...........................31

F.   The District Court Erroneously Found That The Patents-In-Suit Claim An Abstract Idea ...................................................................34

1.   The District Court Failed To Follow Supreme Court Precedent In Applying Step One Under the *Mayo/Alice* Test. ...................................................................34

2.   The District Court's "Abstraction" Analysis Is Reliant On The Concept Of "Migration," Which Is Not Claimed By The Patents-In-Suit ...................................................................35

3.   The District Court's Reliance On "Manual" Migration Confirms That The District Court Misunderstood The Patents-In-Suit ...................................................................39

4.   The Patents-In-Suit Comply And Are Consistent With The USPTO's Examples Of Claims That Do Not Constitute Abstract Ideas. ...................................................................44

G.   By Failing To Consider The Claims As An Ordered Combination, The District Court Erroneously Found That None Of Nearly 40 Claims At-Issue Contain An Inventive Concept. ........45

# TABLE OF CONTENTS
## (continued)

**Page**

    1.    The District Court Conclusorily Read The Claim Elements In Isolation – Not As An Ordered Combination......46

    2.    The Most Directly On-Point Case Is *DDR Holdings, LLC V. Hotels.Com, L.P.*, Which The District Court Attempted To Distinguish By Relying On Conclusory, Unsupported Factual Inferences In Favor Of Lenovo And Novell......52

    3.    The Court Selectively Discussed Portions Of The Two Mackin Declarations But Ignored Other Portions Creating Issues Of Material Fact As To Whether Migration Was A Long-Standing Practice. ............................54

    4.    Moreover, The Patents-In-Suit Comply And Are Consistent With The USPTO's July 2015 Update On Subject Matter Eligibility With Respect To Step Two............58

  H.    While Not Dispositive, The Machine-Or-Transformation Test Confirms That The Patents-In-Suit Cover Patent-Eligible Subject Matter. ......59

  I.    The District Court Improperly Concluded That The Patents-In-Suit Create Broad Preemption Concerns. ............61

    1.    The District Court Improperly Relied On Inaccurate Attorney Argument In Finding That The Patents-In-Suit Pose Broad Preemption Risks......62

    2.    The Coexistence Of Other Patents Claiming Methods And Systems For Transitioning Settings Demonstrates That The Patents-In-Suit Do Not Preempt The Entire Field. ......63

VIII.  CONCLUSION ......65

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Pty Ltd. v. Facebook, Inc.*,
    No. 1-15-CV-156 RP, 2015 WL 5883331 (W.D. Tex. Oct. 8, 2015) ...............46

*Abstrax, Inc. v. Dell, Inc.*,
    No. CIV.A. 2:07CV221DFCE, 2009 WL 3255085 (E.D. Tex. Oct.
    7, 2009) .........................................................................................................61

*Alice Corp. PTY Ltd. v. CLS Bank International*,
    134 S. Ct. 2347 (2014) ..............................................................................*passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    56 F. Supp. 3d 813 (E.D. Va. 2014) ..............................................................42

*Arrhythmia Research Tech., Inc. v. Corazonix Corp.*,
    958 F.2d 1053 (Fed. Cir. 1992) ...............................................................30, 46

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ....................................................................31, 35, 41, 59

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*,
    489 U.S. 141 (1989) ........................................................................................28

*Broadcom Corp. v. Int'l Trade Comm'n*,
    542 F.3d 894 (Fed. Cir. 2008) .......................................................................23

*California Inst. of Tech. v. Hughes Commun. Inc.*,
    59 F.Supp.3d 974 (C.D. Cal. 2014) ...............................................................42

*CCS Fitness, Inc. v. Brunswick Corp.*,
    288 F.3d 1359 (Fed. Cir. 2002) .....................................................................17

*Chamberlain Grp., Inc. v. Linear LLC*,
    No. 14-CV-05197, 2015 WL 4111456 (N.D. Ill. July 7, 2015) .......................61

*CLS Bank Int'l v. Alice Corp. Pty.*,
    717 F.3d 1269 (Fed. Cir. 2013) .....................................................................37

*Commil USA, LLC v. Cisco Sys., Inc.*,
   135 S. Ct. 1920 (2015)...............................................................................27, 28

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat.*
   *Ass'n*
   776 F.3d 1343 (Fed. Cir. 2014) .......................................................52

*CyberSource Corp. v. Retail Decisions, Inc*,
   620 F. Supp. 2d 1068 (C.D. Cal. Mar. 27, 2009) .............................59

*DataTern, Inc. v. Microstrategy, Inc.*,
   No. CV 11-11970-FDS, 2015 WL 5190715 (D. Mass. Sept. 4,
   2015) ................................................................................................51

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) ..............................................*passim*

*Dentsply Int'l, Inc. v. Hu-Friedy Mfg. Co.*,
   202 F. App'x 464 (Fed. Cir. 2006) ..................................................17

*Diamond v. Diehr*,
   450 U.S. 175 (1981)..............................................................31, 37, 39, 41

*Elbex Video, Ltd. v. Sensormatic Electronics Corp.*,
   508 F.3d 1366 (Fed. Cir. 2007) .......................................................19

*Estee Lauder Inc. v. L'Oreal, S.A.*,
   129 F.3d 588 (Fed. Cir. 1997) .........................................................63

*Fairfield Indus., Inc. v. Wireless Seismic, Inc.*,
   No. 4:14–CV–2972, 2014 WL 7342525 (S.D.Tex. Dec. 23, 2014)...................50

*France Telecom S.A. v. Marvell Semiconductor Inc.*,
   39 F. Supp. 3d 1080 (N. D. Cal. 2014)..............................................61

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) .......................................................34

*Intellectual. Ventures I, LLC v. Motorola Mobility LLC*,
   81 F. Supp. 3d 356 (D. Del. 2015) ..................................................50

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
   175 F.3d 985 (Fed. Cir. 1999) .........................................................21

v

*Kaneka Corp. v. Xiamen Kingdomway Group Co.*,
    790 F.3d 1298 (Fed. Cir. 2015) ................................................... 16, 17

*Kenexa BrassRing, Inc. v. HireAbility.com, LLC*,
    No. CIV.A. 12-10943-FDS, 2015 WL 1943826 (D. Mass. Apr. 28,
    2015) ................................................................................................ 57

*Kickstarter, Inc. v. Fan Funded, LLC*,
    No. 11 CIV 6909, 2015 WL 3947178 (S.D.N.Y. June 29, 2015) ..................... 25

*Liebel–Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004) ........................................................... 20

*In re Lowry.*,
    32 F.3d 157 (Fed. Cir. 1994) .............................................................. 60

*Mayo Collaborative Services v. Prometheus Laboratories, Inc.*,
    132 S. Ct. 1289 (2012) .......................................................... 31, 35, 54

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*,
    No. CV 14-732-RGA, 2015 WL 1744343 (D. Del. Apr. 15, 2015) ................ 38

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) ......................................................... 26, 27, 28

*Modern Telecom Sys. LLC v. Earthlink, Inc.*,
    No. SA CV 14-0347-DOC, 2015 WL 1239992 (C.D. Cal. Mar. 17,
    2015) ................................................................................................ 46

*Pandrol USA v. Airboss Ry. Products, Inc.*,
    10 F. App'x 837 (Fed. Cir. 2001) ....................................................... 24

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ......................................................... 20

*Planet Bingo, LLC v. VKGS LLC*,
    576 F. App'x 1005 (Fed. Cir. 2014) ................................................... 57

*Research Corp. Technologies Inc. v Microsoft Corp.*,
    627 F.3d 859 (Fed. Cir. 1994) ........................................................... 46

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000).................................................................26

*Rus v. Gonzales*,
    180 Fed. Appx. 711 (9th Cir. 2006) ....................................63

*Seachange Ina, Inc. v. C-Cor Inc.*,
    413 F.3d 1361 (Fed. Cir. 2005) ...........................................20

*Smartflash LLC v. Apple Inc.*,
    6:13CV447-JRG-KNM, 2015 WL 661174 (E.D. Tex. Feb. 13,
    2015)...............................................................................47, 48

*StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*,
    No. 8:13-CV-2240-T-33MAP, 2015 4042097 (M.D. Fla. July 1,
    2015 )..............................................................................41, 56

*Teleflex v. Ficosa North America Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002) ...........................................22

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015).............................................................17

*TQP Dev., LLC v. Intuit Inc.*,
    No. 2:12-CV-180-WCB, 2014 WL 651935 (E.D. Tex. Feb. 19,
    2014)........................................................................................57

*Trading Technologies Intl., Inc. v. CQG, Inc.*,
    No. 05-CV-4811, 2015 WL 774655 (N.D. Ill. Feb. 24, 2015)..........29

*U.S. Gypsum Co. v. Nat'l Gypsum, Co.*,
    74 F.3d 1209 (Fed. Cir. 1996) ..............................................38

*Ultramercial, Inc., LLC, v. Hulu*,
    LLC, 772 F. 3d 709 (Fed. Cir. 2014).....................................28, 33, 60

*Veracode, Inc. v. Appthority, Inc.*,
    No. CV 12-10487-DPW, 2015 WL 5749435 (D. Mass. Sept. 30,
    2015)........................................................................................55

*Versata Dev. Group, Inc. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015) ...........................................39

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ............................................................17

**Statutes**

28 U.S.C. § 1295 .................................................................................3

28 U.S.C. § 1331 .................................................................................3

28 U.S.C. § 1338 .................................................................................3

35 U.S.C. § 101 .................................................................................44

## I.     <u>STATEMENT OF RELATED CASES</u>

On June 15, 2012, Plaintiff Tranxition, Inc. ("Tranxition"), filed a patent infringement suit against Appellee Lenovo (United States), Inc. ("Lenovo"), in the District of Oregon, asserting infringement of patent U.S. Patent No. 6,728,877 (the "'877 Patent") and U.S. Patent No. 7,346,766 (the "'766 Patent," together with the '877 Patent, the "Patents-in-Suit").  (12-CV-01065 (the "Lenovo Action"), Dkt. No. 1.)  Shortly thereafter, on August 3, 2012, in the same court, Tranxition filed a patent infringement suit against Appellee-Defendant Novell, Inc. ("Novell"), asserting infringement of the same patents.  (12-CV-01404 (the "Novell Action"), Dkt. No. 1.)

On February 9, 2015, Lenovo filed a motion for partial summary judgment with regard to Claim 30 of the '877 Patent, arguing that this claim targeted an abstract idea pursuant to § 101.  (Lenovo Action, Dkt. No. 229.)  On March 3, 2015, Lenovo filed a supplemental motion for summary judgment with regard to the remaining claims in the '877 Patent and the entirety of the '766 Patent. (Lenovo Action, Dkt. No. 234.)

On July 10, 2015, the District Court entered an order granting Lenovo's summary judgment motions and invalidating the Patents-in-Suit.  (JA0001-31.) On August 4, 2015 and August 19, 2015, respectively, Tranxition filed notices of appeal regarding invalidity and claim construction.  (15-1907, 15-1941; Dkt. Nos.

1.)  The District Court entered final judgment in the Lenovo Action on August 7, 2015.  (JA0032-33.)

On August 24, 2015, this Court docketed Tranxition's claim construction appeal and on the same day this Court entered an order consolidating Tranxition's claim construction and invalidity appeals.  (15-1941, Dkt. Nos. 1, 2 (together with Case No. 15-907, the "*Lenovo* Appeal").)

Because Novell had no case-dispositive motions pending at the time, on August 5, 2015, Novell filed a motion asking the District Court to adopt the invalidity opinion entered in the Lenovo Action.  (Novell Action, Dkt. No. 141.)  On August 10, 2015, in order to preserve its appellate rights, Tranxition opposed the motion, and, on August 11, 2015, Novell filed a reply.  (Novell Action, Dkt. Nos. 143, 144.)  On August 19 and 20, 2015, the District Court entered an order and final judgment in the Novell Action, primarily citing collateral estoppel.  (JA0034-37; JA0038-39.)  On August 28, 2015, Tranxition filed a notice of appeal regarding both claim construction and invalidity.  (Novell Action, Dkt. No. 147.)  On September 1, 2015, this Court issued a docketing notice regarding the case no. 15-1958.  (15-1958, Dkt. No. 1 (the "*Novell* Appeal").)

On September 2, 2015, Tranxition filed a motion with this Court seeking to consolidate the appeals in the Lenovo and Novell Actions.  (15-1907, Dkt. No. 17.)  Specifically, Tranxition sought to consolidate the *Lenovo* and *Novell* Appeals and

2

to streamline the briefing across the appeals by requesting leave to file a single opening and reply brief in any consolidated appeal, directing Lenovo and Novell to file a single, joint response, and setting a briefing schedule in any consolidated appeal triggered from the docketing of the appeal in the later-docketed *Novell* Appeal, and extending the word-count limits.  On September 17, 2015, the Court granted Tranxition's motion to the extent that the appeals are consolidated and a new briefing schedule was set.  (15-1907, Dkt. No. 26.)  The motion was otherwise denied.  (*Id.*)  As a result of the Court's order, on Monday, November 2, 2015, Tranxition submitted separate briefs on invalidity and claim construction. (15-1907, Dkt. Nos. 30, 31.)  On Wednesday, November 4, 2015, this Court entered an order rejecting both of Tranxition's opening briefs and ordering that a corrected brief must be filed within 14 days of the date of the order.  (15-1907, Dkt. No. 32.)

## II.    **JURISDICTIONAL STATEMENT**

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because the cases at issue here involve two patent infringement actions brought by Tranxition against Lenovo and Novell.  This Court has jurisdiction under 28 U.S.C. § 1295(a)(1) because this is an appeal from two final judgments, two claim construction orders and two orders invalidating the Patents-in-Suit.  Tranxition timely filed notices of appeal in both the Lenovo and Novell Actions.

### III.    STATEMENT OF THE ISSUES

With regard to the District Court's Invalidity Orders (defined herein as this Court's July 10, 2015 invalidity order in the Lenovo Action (JA0001-31) and August 19, 2015 order in the Novell Action adopting the invalidity order (JA0034-37), Tranxition presents the following issues to this Court for review:

1.    Did the District Court commit reversible error by failing to apply the statutory presumption of validity to the Patents-in-Suit?

2.    Did the District Court commit reversible error by failing to apply the clear and convincing standard of proof in finding the Patents-in-Suit invalid?

3.    Did the District Court commit reversible error by concluding that the Patents-in-Suit are invalid under § 101 of the Patent Act because: (a) the Patents-in-Suit are aimed at a patent-ineligible abstract idea; and (b) the Patents-in-Suit did not state an inventive concept sufficient to satisfy the Supreme Court's test for patentability of an abstract idea under § 101 of the Patent Act?

4.    Did the District Court commit reversible error by finding that the Patents-in-Suit present substantial preemption concerns?

With regard to the District Court's Claim Construction Orders (defined herein as the District Court of Oregon's October 15, 2014 and December 2, 2014, claim construction orders (JA0056-72; JA0040-55) and all orders made during the

August 26 and 27, 2014, *Markman* hearing (12-cv-1065, Dkt. Nos. 159-160)),

Tranxition presents the following issue to this Court for review:

Did the District Court commit reversible error in its construction of the

following terms:

a.    "Personality object";

b.    "Extraction plan";

c.    "active configuration settings";

d.    "value";

e.    "(transitioning or transitions) one or more of the retrieved

configuration settings from a format used on the source computing

system to a format used on the target computing system"; and

f.    "manipulating at least one of the extracted configuration settings from

a location, a name, a value, and a format used on the source

computing system to a location, a name, a value, and a format used on

the target computing system"?

As Tranxition argued in its response to Novell's Motion for Partial

Dismissal (15-1958, Dkt. No. 14), incorporated by reference herein, claim

construction and subject matter eligibility are particularly intertwined with regard

to the Patents-in-Suit.  Indeed, the District Court's improper claim construction led

to its disregard of the dynamic attributes claimed in the patents.  As a result, the

District Court erred in viewing the Patents-in-Suit as an "abstract" idea and failing to identify the inventive concepts.

## IV.   <u>STATEMENT OF THE CASE</u>

Both of Tranxition's Patents-in-Suit teach systems and methods for the dynamic transition of computer settings (a.k.a., a computer's "personality"), adapting the settings to new, similar or different systems and applications.  The Lenovo and Novell Actions sought recovery for the infringing activity of Lenovo and Novell for their respective "migration" software – such as Lenovo's System Migration Assistant ("SMA"), as well as other Lenovo products that include SMA or versions thereof, and Novell's ZENWorks Personality Migration (or Migration Assistant).

The parties completed claim construction briefing in April 2014 (Novell Action) and in July 2014 (Lenovo Action).  (Novell Action, Dkt. Nos. 69-74, 79-81, 85; Lenovo Action, Dkt. Nos. 134-141, 151.)  On August 26 and 27, 2014, the District Court held a single claim construction hearing for both matters and issued the bulk of the claim construction rulings from the bench while taking a limited number of issues under advisement.  (Lenovo Action, Dkt. Nos. 159-160.)  Subsequently, the District Court entered near-identical claim construction orders on October 15, 2014, and December 2, 2014.  (JA0040-55; JA0056-72.)  However,

the Order in the Novell Action addresses "indefiniteness," which was not raised by Lenovo.  (JA0040-55; JA0056-72.)

On February 9, 2015, invoking the recent Supreme Court decision in *Alice Corp. PTY Ltd. v. CLS Bank International*, 134 S. Ct. 2347 (2014), Lenovo filed a motion for partial summary judgment with regard to Claim 30 of the '877 Patent, arguing that this claim targeted an abstract idea pursuant to § 101.  (Lenovo Action, Dkt. No. 229.)  On March 3, 2015, Lenovo filed a supplemental motion for summary judgment with regard to the remaining claims in the '877 Patent and the entirety of the '766 Patent.  (Lenovo Action, Dkt. No. 234.)  On May 20, 2015, the District Court heard argument on Lenovo's motions.  (Lenovo Action, Dkt. No. 285.)

Nearly three weeks after the hearing, on June 10, 2015, Novell filed a motion for judgment on the pleadings as to Claim 30 of the '877 Patent, but not with regard to any other claims in the '877 Patent or the '766 Patent.  (Novell Action, Dkt. No. 126.)

On July 10, 2015, the District Court entered an order granting Lenovo's summary judgment motions and invalidating both the '877 Patent and the '766 Patent pursuant to § 101.  (JA0001-31.)  Subsequently, relying primarily on collateral estoppel, the District Court entered final judgment in the Novell Action.

7

(JA0034-37; JA0038-39.)  Tranxition appeals the District Court's Invalidity Orders and Claim Construction Orders in the Lenovo and Novell Actions.

## V.    **STATEMENT OF THE FACTS**

Tranxition owns the Patents-in-Suit, which describe methods and systems that allows operators to recreate, to a great extent, the workings and configuration of their previous computer, thereby avoiding user disruption after the purchase of a new computer – particularly when the new operating systems or applications are different versions.  (JA0073, '877 Patent, Abstract.)

As computers became simpler for an individual to use, internally, computers also grew vastly in their complexity.  (JA0082, '877 Patent, col. 1, ll. 24-35.)  Modern computers may have tens of thousands of settings that result in the computer having, in effect, a "personality" reflective of the user.  (JA02531-32, ¶¶ 11-13; JA03173-74, ¶ 13.)  Transitioning these settings in an automated and dynamic manner, using entirely different methods from those previously employed, is uniquely a computer problem necessitating an advanced and innovative computer solution such as that provided by the Patents-in-Suit.  (JA02529-30, ¶ 5; JA03171-72, ¶¶ 4-6, 11.)

Not only do operating systems and applications typically have unique and often obscure methods to store configuration settings, the architecture for these settings can actually change between versions of an application.  (JA03172-73, ¶¶

8

6-9.)  This is, in part, because operating systems and applications typically use data structures and methods that obfuscate, conjoin, and/or encrypt configuration settings, all of which makes the systematic transition of settings difficult.  (*Id.*)  It is axiomatic that computer models evolve rapidly, and manufacturers induce users to upgrade frequently.  In part due to these manifold challenges, prior to the settings transfer systems and methods claimed by the Patents-in-Suit, there was no systematic, repeatable, reliable, and automatic way to identify, capture, collect, store, transition, and infuse the transitioned settings into a new and different installation.  (JA03173, ¶¶ 8-9.)

Complicating this problem of the *ability* to migrate personality settings, there was no easy way to locate, deep in the system, the configuration settings, that the user or network administrator *wanted* to transfer because personality is recorded in dozens of different ways, with varying levels of obfuscation. (JA03172, ¶ 6; JA0244, JA0262-63, '766 Patent, Abstract, and col. 20, ll. 56-68-col. 21, 1-15.)  Even when a central settings-location exists, the methods used to create this so-called "personality" have little consistency because these settings are encoded in a manner that flows from the personal preferences of software developers that develop operating systems and applications.  (JA03172, ¶ 6.)  With a typically complex computer personality, it would be, for all intents and purposes, practically impossible for an individual to "manually" get this right in one lifetime.

9

(JA02531-32, ¶¶ 11-13; JA03173-74, ¶ 13.)  Due to the manifold variety of
encoding methods and data structures, only a computer that has been specially
programmed with specific applications can carry out the claimed methods and
systems.  (JA03174, ¶ 18.)

In order to account for and create a computer solution to this uniquely
computer problem, the Patents-in-Suit teach unique methods and systems to
transition a computer's personality using dynamic rules that respond to the extant
personality of either the source computer and/or target computer.  (JA03174, ¶ 17.)
To accomplish transitioning, the Patents-in-Suit further teach implementing a
translation system with transition rules (found in a Personality Object) that
describe the exact manner in which a setting can be found, what should happen to
the setting (change, leave alone, alter format, alter name, alter values, alter
location) and where and how to place the setting in the target and manipulate many
of the dynamically selected settings found on a particular source computer and are
used by the preparation application and translation application.  (JA0073, JA0076,
JA0079-80, JA0082-83,  JA0085 ('877 Patent, Abstract, Figs. 3 and 6, col. 2, l. 57-
col. 3, l. 3, col. 7, ll. 21-8); JA0247, JA0250-51, JA0253, JA0258 ('766 Patent,
Figs. 3 and 6, col. 1, ll. 57-59, col. 11, ll. 37-44).)

The claims asserted in the District Court actions below include Claims 1-12,
15-26, 29 and 30 of the '877 Patent and Claims 1-3, 5-11, 15, and 42-44 of the

10

'766 Patent (collectively, the "Asserted Claims"). Claims 1, 16 and 30 are the

independent claims in the '877 Patent. Claims 2-12 and 15 of the '877 Patent

depend (directly or indirectly) from Claim 1 and further limit the claimed method

to specific applications. Claims 17-26 and 29 of the '877 Patent depend (directly

or indirectly) from Claim 16 and further limit the claimed system to specific

applications.

Claims 1 and 42 are the independent claims in the '766 Patent. Claims 2-3,

5-11, and 15 of the '766 Patent depend (directly or indirectly) from Claim 1 and

further limit the claimed method to specific applications. Claims 43 and 44 of the

'766 Patent depend (directly or indirectly) from Claim 42 and further limit the

claimed method to specific applications.

These claims in the '877 and '766 Patents define specific technological

solutions to these technological problems – transitioning a computer's personality

from a source computer to a target computer.

## VI.    <u>SUMMARY OF THE ARGUMENT</u>

In order to invalidate the '877 and '766 Patents for lack of subject matter

eligibility under § 101, the District Court misapplied the Supreme Court's *Alice*

decision and contorted the meaning of "abstract" to the point of making it

impossible for an innovator to obtain patent protection for building a better

mousetrap.

On November 4, 1879, the United States Patent and Trademark Office issued patent 221,320, often credited as the first patented lethal mousetrap.[1] Dubbed "Royal No. 1," the patent issued described a set of fierce-looking cast-iron jaws, operated by a coiled spring, triggered by a mechanism nestled between the jaws. The now-classic spring-loaded mousetrap was first patented by William C. Hooker, who received U.S. Patent No. 528,671 in 1894. In fact, in the 100+ years since Royal No. 1, more than 4,400 mousetrap patents were awarded in dozens of different subclasses, including "Electrocuting and Explosive," "Swinging Striker," "Choking or Squeezing," and 36 others.[2]

Thousands of mousetraps have successfully been patented, up to the present date. Yet, each and every mousetrap can be distilled to the abstract purpose of "catching and killing mice." Through the lens of such a distillation, each and every mousetrap would be properly deemed "abstract" – after all, people have been catching and killing mice since before recorded history. However, in order to advance ingenuity, the USPTO has labored to define the purpose of a mousetrap in terms of its *actual functionality* and its *methods to achieve that functionality* (such

---

[1] *See* Wikipedia, *Mousetrap*, https://en.wikipedia.org/w/index.php?title=Mousetrap&oldid=679892525.

[2] *See* Nicholas Jackson, *Mousetraps: A Symbol of the American Entrepreneurial Spirit*, The Atlantic (Mar. 28, 2011), http://www.theatlantic.com/technology/archive/2011/03/mousetraps-a-symbol-of-the-american-entrepreneurial-spirit/70573.

as advancements in spring-loaded traps), rather than limiting the purpose to the end result (catching and killing mice).

Tranxition's Patents-in-Suit teach systems and methods for the dynamic transitioning of computer settings, adapting the settings to new, similar, or different operating systems and applications. The patents teach this through creation of transition rules that transfer much of the unique individual personality of a source computer, by locating configuration settings, extracting configuration settings, storing, and manipulating the extracted configuration settings, preparing a transition package and receiving and infusing the transition. (JA0262-63; col. 20, ll. 11-44. 56-68-col. 21, ll. 1-15 ('766 Patent, claims 37 and 42).) By teaching dynamic (a.k.a. "smart") location, manipulation and transitioning of settings, Tranxition's Patents-in-Suit enable ordinary users to accurately transition any number, including *thousands*, of settings, across different platforms (such as Mac to PC), retrieved from and placed in countless different locations on a computer – many impossibly obscure to a lay user yet critical to the proper usage of the computer.

Despite this specialized and unique method of solving for the problem of transitioning computer settings across heterogeneous environments, the District Court grossly simplified the Patents-in-Suit, distilling them to the abstract notion of "the process of transferring settings between computers." (JA0011.)

13

Tranxition's Patents-in-Suit can no more be distilled into this simplistic process than a mousetrap can be distilled to "an animal trap used primarily to catch mice."

The District Court's simplification of the Patents-in-Suit were reflected in claim construction as well. Rather than adopt the plain, ordinary meaning in accordance with the language used in the Patents-in-Suit, the District Court stripped the Patents-in-Suit of their dynamic qualities by importing limitations from the specification into the claims as well as limitations expressly recited in other claims.

Relieved of this simplistic mischaracterization, the Patents-in-Suit are anything but abstract and the remainder of the District Court's Invalidity Orders similarly unravels. For example, furthering its expansive and unjustified broadening of the abstraction label, the District Court determined that, because some "migration" processes might be done by hand, to some degree or another, it is therefore presumed to be well-known, conventional and routine despite the fact that the mechanism described by the Patents-in-Suit is completely different from this so-called "manual migration." (JA0014.) Again, the parallel to patenting mousetraps is inescapable. Despite the fact that humans have killed mice for millennia, the focus on mousetrap functionality has allowed the patenting of *thousands* of mousetraps. Because the Patents-in-Suit teach specialized and dynamic systems and methods of transitioning settings, so too can they be

14

patented, despite the fact that some form of transferring settings has allegedly been performed by someone, in some manner, for years.

Furthering the District Court's error, the term "migration" is found in the patent specification, but not anywhere in the actual claim language, which actually claims the dynamic activity of "transitioning" settings.  The District Court improperly lifted a term in the specification – "migration" – and grafted this term into the claim language.  Suffice to say, whether the unclaimed action of "migration" is abstract is irrelevant to whether the dynamic transitioning process claimed by the Patents-in-Suit is abstract.

Similarly, in determining whether or not the Patents-in-Suit supply an inventive concept, the District Court had the obligation to understand the claims and claim elements as an ordered combination.  Instead, the District Court selected fragments of claim language, condemning each for a lack of inventive concept. (JA0019.)  However, just as a mousetrap is more than a "wood plank," "spring," "swing bar," and "triggering mechanism," so too are the Patents-in-Suit more than "retrieving," "extracting," and "transitioning."  When properly analyzed as a whole, the inventive concept is found in the dynamic nature of the patents, and less so in the isolated atomic pieces.  (JA0262-63; col. 20, ll. 11-44. 56-68-col. 21, ll. 1-15 ('766 Patent, claims 37 and 42).)

In its rush to invalidate the Patents-in-Suit, the District Court disregarded the long-standing statutory presumption of patentability, and the corresponding Congressionally-mandated "clear and convincing" burden of proof for a finding of invalidity.  Because Congress has not acted – *Alice* and its progeny notwithstanding – there has not and cannot be a change in the application of this statutory presumption without the action of Congress.  The District Court's error is not harmless – it liberally supplied its own unsupported factual conclusions, accepted as true the unsupported factual statements of Lenovo's counsel, and weighed, then dismissed, much of Tranxition's unrebutted evidence.  The District Court's treatment of the evidence that permeates this issue runs afoul of its obligations with regard to a motion for summary judgment.

Properly understood, the Patents-in-Suit teach specific, dynamic computer solutions to a uniquely computer problem.  Tranxition respectfully asks this Court to prevent its patented computer solutions from being unfairly swept in with truly abstract ideas implemented on a general purpose computer.  *See Alice*, 134 S. Ct. at 2347.

## VII.  <u>ARGUMENT</u>

The law of the regional circuit applies to the standard of review for a grant of summary judgment. *Kaneka Corp. v. Xiamen Kingdomway Group Co.*, 790 F.3d 1298, 1303 (Fed. Cir. 2015).  Accordingly, with regard to invalidity, the Ninth

16

Circuit *de novo* standard of review applies. *Id.*; *see also DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014). Questions of claim construction are also reviewed *de novo*. *Teva Pharm. USA, Inc. v. Sandoz, Inc*., 135 S. Ct. 831, 841 (2015).

## A.    The District Court Erred In Construing Claim Terms, Leading To Its Numerous Errors In Its § 101 Analysis.

In construing patent claims, the court first looks to the words of the claims themselves. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Indeed, there is a "'heavy presumption'" that claim terms will be given their "ordinary and customary meaning." *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). "Courts, however, must be careful to avoid reading limitations from the specification into the claims." *Dentsply Int'l, Inc. v. Hu-Friedy Mfg. Co.*, 202 F. App'x 464, 467 (Fed. Cir. 2006) (JA5324) (citing *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998)).

The District Court misunderstood the dynamic nature of Tranxition's inventions, *i.e.*, the ability to not only *collect* obscure computer settings hidden throughout a computer, but also to *transition* the settings between the potentially heterogeneous environments (*e.g.*, different operating systems, application versions, or registry locations) of a target computer to a source computer. By disregarding the clear language of the patents, the District Court overly-narrowed

17

the meaning of the claim terms discussed in further detail below, stripping away

the inventive concepts that abound in the Patents-in-Suit.

### 1.    "Personality Object"

The District Court erred in construing "Personality object" because

"Personality object" is not limited to an object oriented programming object, to not

being a wizard, or to not being directly associated with an initialization file.

Tranxition maintains that the proper construction is: "An object containing

information related to the collection of configuration settings."  Lenovo, on the

other hand, proposed: "An object oriented programming object containing:  (1) at

least one object with information about configuration settings and (2) multiple

transition rules for locating configuration settings and that (3) is not a wizard or

other programming module capable of reading and writing settings."  (JA0792.)

Arguing prosecution history disclaimer, Lenovo mischaracterized the record

and misled the District Court.  Lenovo plucked two pieces of correspondence out

of the prosecution history for a different patent application: (i) an Office Action,

dated November 27, 2001; and (ii) Tranxition's "Amendment and Response,"

dated February 27, 2002.  Lenovo then argued the application of the "prosecution

disclaimer doctrine" by asserting that Tranxition abandoned the patent application

No. 09/300,862 (the "'862 Application") because it could not distinguish the

invention in the Hunter patent (the "Hunter reference") from Tranxition's

invention. Misled by Lenovo's distortion of the record, the District Court construed the term "Personality object" to contain three limitations that stemmed from the prosecution history for the ***'862 Application*** – but not for the Patents-in-Suit.

Yet, to the extent any disclaimer could have occurred, it was limited to the parent application – not the applications for either of the '877 and '766 Patents. As to the Patents-in-Suit, however, prosecution history disclaimer could not apply. Even if prosecution history disclaimer applied, Lenovo failed to demonstrate a clear, unambiguous, and deliberate disclaimer. *See Elbex Video, Ltd. v. Sensormatic Electronics Corp.*, 508 F.3d 1366, 1368-69, 1372 (Fed. Cir. 2007). It is plain that the statements from the file history of the '862 Patent Application relied on by Appellees at the *Markman* hearing, do not amount to the clear, unambiguous, and deliberate "disavowal" of claim scope required by the Federal Circuit. *Id.*

The proper construction of "Personality object" is invariably: "An object containing information related to the collection of configuration settings."

### 2.    "Extraction plan"

The District Court erred in construing "Extraction plan" because "Extraction plan" cannot be defined to necessarily include a full list, an exclusion list, and an inclusion list under the doctrine of claim differentiation. Tranxition proposed its

plain and ordinary meaning.  (JA0701.)  Lenovo and Novell proposed: "a plan for extracting configuration settings that includes a full list of identity units to be located, an exclusion list and an inclusion list."  (JA0787.)

The construction reached by the District Court, however, was "a plan for extracting configuration settings that includes a full list of identity units to be located, an exclusion list, and an inclusion list."  (AP0051.)  In arriving at this errant construction, the District Court improperly imported a limitation into an independent claim when that limitation was expressly recited in related dependent claims, violating the doctrine of claim differentiation.  *Seachange Ina, Inc. v. C-Cor Inc.*, 413 F.3d 1361, 1368 (Fed. Cir. 2005) (quoting *Karlin Tech. Inc. v. Surgical Dynamics, Inc.*, 177 F.3d 968, 971-72 (Fed. Cir. 1999*)); see also Liebel–Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) ("[T]he presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim.").

The District Court also swept details from the specification into the language of the claims – *i.e.*, "importing the limitations from the preferred embodiments onto the claims."  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) (reading a limitation from the written description into claims is a "cardinal sin").  The claim language is not limited to the examples in the specification.

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999) ("[g]eneral descriptive terms will ordinarily be given their full meaning").

As advocated by Tranxition, the term "Extraction plan" should be given its plain and ordinary meaning.

### 3.    "active configuration settings"

In the Novell Action, the District Court erred in construing "active configuration settings" because "active configuration settings" is not limited to configuration settings selected through an inclusion list.  Tranxition proposed its plain and ordinary meaning.  Novell proposed: "[c]onfiguration settings selected from an inclusion list."  (JA4635.)

In construing the term "active configuration settings," the District Court concluded that the term means "configuration settings selected from an inclusion list."  (JA0067.)  But this construction does not work because it violates the doctrine of claim differentiation.  Additionally, the court's construction of "active configuration settings" ignores the fact that full lists, inclusion lists, and exclusion lists are alternative ways of selecting "active configuration settings."  Nothing in the intrinsic evidence suggests that Tranxition intended to limit this term to only those settings selected from an inclusion list.  Accordingly, the proper construction of the term should be its plain and ordinary meaning.

### 4.    "value"

Fourth, the District Court erred in construing "value."  Tranxition proposed "[t]he data stored in a variable or constant." (JA0692.)  Novell proposed: "The data stored in a variable or constant that is distinct from location, name, and format." (JA0783.)

The District Court, in the Novell Action, construed "value" to be "data stored in a variable or constant that is distinct from location, name, and format." (JA0066.)  The District Court's construction, however, imports the limitation that the data must be "distinct from location, name and format."  (*Id.*)  But, there is no intrinsic evidence requiring this limitation to be imported into this term.  Thus, the District Court's construction must be reversed.  *See, e.g.*, *Teleflex v. Ficosa North America Corp.,* 299 F.3d 1313, 1324 (Fed. Cir. 2002).  The term "value" should be construed as "the data stored in a variable or constant."

### 5.    "(transitioning or transitions) one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system"

Next, the District Court erred in construing "(transitioning or transitions) one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system."  Tranxition proposed its plain and ordinary meaning.  (JA0692.)  Lenovo proposed: "[c]hanging the arrangement of data of the one or more retrieved configuration

settings from a format used on the source computing system to a different format used on the target computer system." (JA0786.)

The District Court construed the term to be "(changing or changes) the arrangement of data of one or more retrieved configuration settings from a format used on the source computing system to a format used on the target computing system." (JA0051.) The District Court's construction is confusing and unnecessary. The addition of the "arrangement of data" redundantly requires that a configuration setting have a format. *See Broadcom Corp. v. Int'l Trade Comm'n*, 542 F.3d 894, 907 (Fed. Cir. 2008) (citing *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1321-22 (Fed. Cir. 2006)). This limitation, however, is already present in the claim phrase as written because it requires that the configuration setting be transitioned from a format used on the source computer to a format used on the target computer.

The proper construction of the term should be its plain and ordinary meaning.

6.      **"manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system"**

Lastly, the District Court erred in construing "manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, and a format

23

used on the target computing system." Tranxition proposed its plain and ordinary meaning. (JA0702.) Lenovo, however, proposed: "[c]hanging at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a different location, name, value, and format used on the target computing system." (JA0783.)

The District Court construed the term to be "changing at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, name, value, and format used on the target computing system." (JA0052.) By the District Court's construction, altering the intentional selection of the all-encompassing word "manipulating" to the very narrow and restrictive word "changing," the scope and the breadth of Claim 1 is lost. *Pandrol USA v. Airboss Ry. Products, Inc.*, 10 F. App'x 837, 842 (Fed. Cir. 2001) (JA5400). Such narrowing is improper and reversible error. *Id.* The term should be given its plain and ordinary meaning.

### 7.    The Properly Construed Terms

Tranxition respectfully requests that the District Court's Claim Construction Orders be vacated with regard to the terms below, and that the following constructions be entered:

| Term | Requested Construction |
|------|------------------------|
| "Personality object" | "An object containing information related to the collection of configuration settings." |

| "Extraction plan" | Plain and ordinary meaning |
|---|---|
| "active configuration settings" | Plain and ordinary meaning |
| "value" | "The data stored in a variable or constant." |
| "(transitioning or transitions) one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system" | Plain and ordinary meaning |
| "manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system" | Plain and ordinary meaning |

### B.   On A Motion For Summary Judgment, The District Court Must Draw All Reasonable Inferences In Favor Of Tranxition As The Nonmoving Party.

At the summary judgment stage, Lenovo[3] bore "the initial burden of demonstrating 'the absence of a genuine issue of material fact.'"  *Kickstarter, Inc. v. Fan Funded, LLC*, No. 11 CIV 6909, 2015 WL 3947178, at \*4 (S.D.N.Y. June 29, 2015) (JA5207-8) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Accordingly, the Court should have viewed "the established facts, as well as any inferences of fact drawn from such facts," "in the light most favorable to [Tranxition]."  *Id.* (citing *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  In

---

[3] Because Novell filed a subsequent motion requesting that the District Court adopt the Lenovo invalidity order, the same summary judgment standard applies to Novell.  (Novell Action, Dkt. No. 141, JA0034-39.)

drawing those inferences, the Court should have avoided making credibility determinations or weighing the evidence, as those are functions of the jury. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).

As described further below, despite nominally applying the summary judgment standard, the District Court actually denied the existence of disputed issues of material fact, improperly weighed evidence, and failed to view established facts and factual inferences in the light most favorable to Tranxition.

### C.    A Presumption Of Validity Applies To All Patents And May Only Be Overcome By Clear And Convincing Evidence.

In addition to only superficially applying the summary judgment standard, the District Court declined to apply the presumption of validity to the Patents-in-Suit and the accompanying "clear and convincing" standard to the determination of the facts at issue.  In doing so, the District Court disregarded controlling statutory and Supreme Court authority.

### 1.    § 282 Of The 1952 Patent Act Establishes That Patents "Shall Be Presumed Valid" And The "Burden Of Establishing Invalidity . . . Shall Rest On The Party Asserting It."

As alleged infringers, Lenovo and Novell "must contend with the first paragraph of § 282, which provides that '[a] patent shall be presumed valid' and '[t]he burden of establishing invalidity . . . rest[s] on the party asserting such invalidity.'"  *Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238, 2243 (citing 35

USC § 282(a)).  As such, "by its express terms, § 282 establishes a presumption of patent validity, and it provides that a challenger must overcome that presumption to prevail on an invalidity defense."  *Id.* at 2245.  On this point, the Supreme Court has been explicit:

> [§] 282 creates a presumption that a patent is valid and imposes the burden of proving invalidity on the attacker.  *That burden is constant and never changes and is to convince the court of invalidity by clear evidence.*

*Id.* at 2243 (emphasis supplied) (citing *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1360 (Fed. Cir. 1984)).  This "presumption takes away any need for a plaintiff to prove his patent is valid to bring a claim."  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1929 (2015).

### 2.    Binding Supreme Court Authority Establishes That The Statutory Presumption In Favor Of Validity May Only Be Overcome By Clear And Convincing Evidence.

In *Microsoft Corp.*, the Supreme Court unanimously held that pursuant to § 282, "any invalidity defense" must "be proved by clear and convincing evidence."  *Microsoft Corp.*, 131 S. Ct. at 2242, 2242-43, 2245-48.  Not only did Congress intend a "clear and convincing" burden in 1952, Congress has amended § 282 multiple times in the last 30 years, yet apparently has declined to "even consider[] a proposal to lower the standard of proof."  *Id.* at 2252.  Congress "is presumed to

have chosen" this "high bar,"[4] and it remains unchanged.  *Commil, USA, Inc.*, 135

S. Ct. at 1929 (citing *Microsoft*, 131 S. Ct. at 2245-2248).

> **3.    The District Court Erred In Finding That There Is No Longer A Presumption Of Validity Nor A Clear And Convincing Burden With Regard To Questions Of Patent Invalidity.**

The District Court erred in declining to apply the proper statutory

presumption and evidentiary standard to the question of validity of the Patents-in-

Suit.  Without citing *Microsoft* or § 282, the District Court relied on the

concurrence in *Ultramercial, Inc., LLC, v. Hulu,* LLC, 772 F. 3d 709, 720 (Fed.

Cir. 2014) (Mayer, J., Concurring) and concluded that the long-standing statutory

scheme had been upended by the "recent Supreme Court decisions in *Mayo* and

*Alic*e."  (JA0008.)  Citing the same concurring opinion, the District Court further

elaborated that the "clear and convincing standard" is now "'unwarranted' in light

of recent Supreme Court decisions."  (JA0009.)

The District Court's reliance on the *Ultramercial* concurrence is misplaced.

Neither Congress nor the Supreme Court has spoken as to propriety of the

---

[4] Given the high stakes of patent invalidation, it is not surprising that overturning the presumption of validity requires an act of Congress.  Inventors create and disclose "new, useful, and nonobvious advances in technology and design in return for the exclusive right to practice the invention for a period of years."  *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151 (1989).  Denying this presumption unjustly deprives patent holders of this essential part of the bargain. If patents are too easy to invalidate based on a lower standard, the risk of invalidation undercuts the incentive to disclose inventions.

presumption of validity and accompanying clear and convincing standard.  The

District Court, thus, remained "'duty-bound to apply the law as enacted by

Congress and signed by the President, and in light of the Federal Circuit's

interpretation thereof.'" *Trading Technologies Intl., Inc. v. CQG, Inc.*, No. 05-CV-

4811, 2015 WL 774655, at *3 (N.D. Ill. Feb. 24, 2015) (JA5263) (quoting

*CertusView Techs., LLC v. S & N Locating Servs., LLC*, No. 2:13cv346, 2015

269427, at *14 (E.D. Va. Jan. 21, 2015).)  The District Court should have granted

summary judgment only if Lenovo and Novell had shown "by clear and

convincing evidence that the Patents-in-Suit claim patent-ineligible subject

matter," *id.*; yet, it improperly declined to hold Novell and Lenovo to this

heightened standard.

### D.    The District Court's Failure To Apply The Proper Legal Standards Resulted In Multiple Reversible Errors.

Instead, the District Court only nominally applied the summary judgment

standard and totally disregarded the presumption of validity and the related clear

and convincing evidentiary standard.  This misapplication of the law is

compounded by the District Court's reliance on the false premise that "[t]he parties

ha[d] not raised any factual disputes . . . for the Court to resolve."[5]  (JA0009.)

---

[5] The presumption of validity still applies when subject matter eligibility is considered a question of law.  In those circumstances (not present here), the court must still afford "with appropriate recognition of the burdens on the challenger of a duly issued United States patent" because the "statutory presumption of validity is

Material issues of fact persist and, therefore, foreclose summary judgment on §
101 grounds.  Further, even when the District Court addressed the underlying
factual issues (despite denying their existence), it failed to view those facts in the
light most favorable to Tranxition or to apply the clear and convincing evidentiary
standard.

These factual issues include, but are not limited to: (1) the District Court's
results-oriented and dismissive analysis of the unrebutted declarations of inventor
Kelly Mackin which set forth crucial facts about, among other things, the state of
the art technologically at the time of the invention; (2) broad and conclusory
factual inferences drawn from the patent language that the claimed process was
"fundamental" and "widely-utilized process" that was performed "manually" at the
time of the invention (JA0011); and (3) the District Court's reliance on attorney
argument to support its conclusion that the Patents-in-Suit impose "potentially
extensive" preemption concerns.  (JA0030.)  In sum, the Court committed multiple
reversible errors in failing to recognize these and other factual issues and to
properly draw inferences from those same factual issues.

---

based in part on recognition of the expertise of patent examiners." *Arrhythmia
Research Tech., Inc. v. Corazonix Corp.*, 958 F.2d 1053, 1056 (Fed. Cir. 1992)
(citing *Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1139 (Fed. Cir. 1985)).

### E.    The Current Status Of § 101 "Abstractness" Law.

§ 101 of the Patent Act provides that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  The Supreme Court has found exceptions to patentability, holding that "laws of nature, natural phenomena, and abstract ideas" are not patentable.  *Diehr*, 450 U.S. 175, 185 (1981).

With respect to "abstract ideas," the Supreme Court, in *Bilski v. Kappos*, determined that the patent covered "the basic concept of hedging, or protecting against risk," which was an "unpatentable abstract idea" and a "fundamental economic practice long prevalent in our system of commerce and taught in any introductory finance class."  561 U.S. 593, 611 (2010).

The Supreme Court revisited patent eligibility in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, where the Court expanded on the contours of patent eligibility under § 101.  132 S. Ct. 1289 (2012).  In *Mayo*, the Court first determined whether the claims covered an unpatentable law of nature. The Court then asked: "What else is there in the claims before us?"; and, in answering the question, the Court laid out the applicable analysis by considering the individual elements of the subject claim as well as the claim as an ordered

combination to find sufficient material to transform the nature of the claim. *See id.* at 1297-98.

Most recently, in *Alice*, the Supreme Court made clear that the two-step approach set forth in *Mayo* applied not only to patents relating to natural laws, but also to patents relating to abstract ideas. *Alice*, 134 S. Ct. at 2355.  In *Alice*, the Supreme Court explained that *Mayo* established "a framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts": "First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. [Citation.]  If so, we then ask 'what else is there in the claims before us?'"  *Alice*, 134 S. Ct. at 2355 (internal citations omitted).  Aside from confirming the applicable test, *Alice*'s holding is limited: "[M]ere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Id.* at 2358.

In the wake of *Alice*, the Federal Circuit has wrestled with the issue of whether various computer technology patents disclose the "inventive concept" required for patentability.

In *Ultramercial*, the Federal Circuit addressed the eligibility of a patent directed to "a method for distributing copyrighted media products over the Internet where the consumer receives a copyrighted media product at no cost in exchange

for viewing an advertisement." 772 F.3d at 712. The Court held that the claims of the patent were not directed to patent-eligible subject-matter because they merely recited the abstract idea "that one can use [an] advertisement as an exchange or currency" without adding any "inventive concept" to that abstract idea. *Id.* at 714-16 (internal citation omitted). The fact that the claims invoked the Internet was "not sufficient to save [the] otherwise abstract claims from ineligibility . . . ." *Id.* at 716.

By contrast, in *DDR Holdings*, the Federal Circuit, closely adhering to *Alice*'s limited holding, upheld the validity of claims directed to a computer solution "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." 773 F.3d at 1257. The patent in *DDR Holdings* described a system for generating a web page that could, for example, "combine the logo, background color, and fonts of the host website with product information from the merchant." *Id.* at 1248-49 (quoting U.S. Patent No. 6,629,135 at 2:56-63, 3:20-22). The purpose of the invention was to allow a website to "display a third-party merchant's products, but retain its visitor traffic by displaying the product information from within a generated web page that 'gives the viewer of the page the impression that she is viewing pages served by the host' website." *Id.* This Court confirmed that inventive concept can

be established by something that targets and improves existing technological processes for a specific problem in a variety of fields of invention.  *Id.*

Then, most recently, in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1369-71 (Fed. Cir. 2015), the Federal Circuit considered a patent that claimed "[a] system for providing web pages accessed from a web site in a manner which presents the web pages tailored to an individual user."  U.S. Patent No. 7,603,382 claim 1.  Determining that "customizing information based on (1) information known about the user and (2) navigation data" was an abstract idea, in part because other media outlets had utilized variants of that technique "for decades," this Court found that the patent claims contained no inventive concept. *Intellectual Ventures*, 792 F.3d at 1369-70.  This Court distinguished *DDR Holdings* from *Intellectual Ventures*, reasoning that, like the Patents-in-Suit here, the patent in *DDR Holdings* provided an Internet (computer) based solution to an Internet (computer) problem.  *See* 792 F.3d at 1371.

### F.     The District Court Erroneously Found That The Patents-In-Suit Claim An Abstract Idea.

#### 1.     The District Court Failed To Follow Supreme Court Precedent In Applying Step One Under the *Mayo/Alice* Test.

In determining that the Patents-in-Suit are directed to abstract ideas and lacked any inventive concept, the District Court committed reversible error by

ignoring applicable law, misconstruing the actual claim language, and disregarding material factual issues.

The abstract idea exception to patent eligibility does not apply if the invention "solve[s] a technological problem in conventional industry practice," "improve[s] an existing technological process," or otherwise "effect[s] an improvement in any other technology or technical field." *Alice*, 134 S. Ct. at 2358, 2359 (internal citation omitted). Under *Alice*, a claim that does represent such a technological advance is patent-eligible. *Id.*

Lost from the District Court's opinion is any consideration that a patent may be directed to a unique ***application*** of a fundamental principle. *See Alice*, 134 S. Ct. at 2355; *Mayo*, 132 S. Ct. at 1293-94; *Bilski*, 561 U.S. at 611 (An "'*application* of a law of nature or mathematical formula to a known structure or process may well be deserving of patent protection.'") (quoting *Diehr*, 450 U.S. at 187) (emphasis in *Bilski*).

> **2.    The District Court's "Abstraction" Analysis Is Reliant On The Concept Of "Migration," Which Is Not Claimed By The Patents-In-Suit.**

The District Court erred by ignoring the actual language of the Patents-in-Suit and characterizing them as being directed to "migration" of computer settings, which it identified as a "fundamental and widely-utilized process." (JA0011.) Whether or not "migration" is fundamental and widely utilized is irrelevant –

Tranxition's claims are directed to the **transitioning** – not "migration" – of a computer's complex personality from a source computer to a target computer, a patent-eligible, computer-based solution to a computer problem.

The term "migration" appears nowhere in the claims of the Patents-in-Suit. Because the term "migration" is not in the claim language, it is evident that the District Court took the word "migration" from the specification (with its predicate "manual") and grafted those words, and their accompanying concept, into the claim language. However, in construing the claims, a court is not permitted to construe language from outside the claims inconsistent with the claims themselves. By doing so, the Court injected an unclaimed abstract idea – settings "migration" – into the claims themselves, then subsequently found that this abstract idea has been performed "manually" for years. However, the Patents-in-Suit specifically claim a technology that does not merely "migrate," but "transitions," in a dynamic fashion, computer settings from a source to a target computer. (*See, e.g.*, JA0261, col. 17, 1. 51-col. 18, ll. 1-9, 38-55 (specifically claiming "transitioning").)

Because it was not in the patent claims, "migration" was not construed by the District Court. However, "migration" is commonly defined as movement from one part of something to another.[6] By contrast, transition generally means the

---

[6] http://www.oxforddictionaries.com/us/definition/american_english/migration

process or a period of changing from one state or condition to another, which exceeds the abstract concept of migration.[7]   By improperly inserting the concept of "migration" into the claim language, then finding the resulting concept abstract, the District Court committed reversible error.  Because, per the terms of the claims, the Patents-in-Suit claim a dynamic transitioning of settings, the Patents-in-Suit are not abstract, and the District Court's analysis regarding "manual migration" must be disregarded.

It is axiomatic that a court must consider the claims together "as a whole" and cannot "dissect the claims into old and new elements" to reach a conclusion that the claim is directed to an abstract idea.  *See Diamond v. Diehr*, 450 U.S. at 188-189.  Any patent claim, if so stripped, simplified, generalized, paraphrased, and reduced to ever higher levels of abstraction, cannot avoid becoming improperly labeled as "abstract."  *See CLS Bank Int'l v. Alice Corp. Pty.*, 717 F.3d 1269, 1298 (Fed. Cir. 2013), *aff'd*, 134 S. Ct. 2347 (2014) ("A court cannot go hunting for abstractions by ignoring the concrete, palpable, tangible limitations of the invention the patentee actually claims.").

---

[7] The District Court's construction of the term "(transitioning or transitions) one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system" is one of the terms under appeal.  However, under either interpretation of the term, the District Court failed to find the inventive concepts in the claims.

Applying the District Court's analysis, even some of history's greatest

inventions would be considered "abstract":

> For example, Alexander Graham Bell's patent could be
> said to claim the abstract idea of oral communication.
> But his invention was not the concept of oral
> communication itself; it was a technological innovation
> that allowed a type of oral communication between
> people who could otherwise not communicate in that
> way.

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, No. CV 14-732-RGA, 2015

WL 1744343, at *5 (D. Del. Apr. 15, 2015) (JA5229).

Far from claiming the abstract idea of migrating settings, the Patents-in-Suit

claim specific applications of concepts for transitioning computer settings – *i.e.*,

the computer's personality – by invoking transition rules relevant to the unique,

individual personality of a source computer.  (JA0090, '877 Patent, col. 17, ll. 29-

62.)  Far from a general application of an abstract idea on a general purpose

computer, the claims of the Patents-in-Suit recite computer-implemented methods

and systems requiring a specific configuration of computer hardware and software,

with specified functions.

Against all inferences most favorable to Tranxition, Lenovo failed to

overcome the presumption of validity by clear and convincing evidence.  *U.S.*

*Gypsum Co. v. Nat'l Gypsum, Co.*, 74 F.3d 1209, 1212 (Fed. Cir. 1996).  The

Asserted Claims are rooted in computer technology intended to overcome a

problem specifically arising in the realm of computers — the problem of computer settings unknown to the target computer. *See DDR Holdings*, 773 F.3d at 1257. Claims, such as the Asserted Claims, that solve a technological problem are patentable. *Cf. Diehr*, 450 U.S. at 177-78 (computer-implemented process that employed widely used mathematical equation to solve technological problem was patentable); *Versata Dev. Group, Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1326 (Fed. Cir. 2015).

### 3.    The District Court's Reliance On "Manual" Migration Confirms That The District Court Misunderstood The Patents-In-Suit.

The keystone of the District Court's flawed reasoning is based on a misunderstanding of the concept of "manual" migration. In finding that the Patents-in-Suit were directed to "well-known, conventional, and routine" activity, the District Court relied on the specification's description of manual migration – *i.e.*, reconfiguring a new computer:

> "When a new computer system is used," the patents explain, "a user or a user's agent typically has to re-configure the new computing system to include configuration settings that were used on an old computer system. **All but the most rudimentary pieces of 'the migration process' are done by hand**[.]"

(JA0014 (quoting '877 patent, col. 2, ll. 2–8) (emphasis in original).)

But the District Court's finding violates at least two basic precepts: (1) Tranxition is entitled to every favorable inference in its favor – not Lenovo (or

39

Novell); and (2) reference to "manual activity" in the specification is not what the patents claim.

First, the District Court pointed to no evidence of "well-known, conventional, and routine;" nor was any submitted into the record. Rather than interpret the specification in Tranxition's favor, as it was required to do, the District Court mistakenly inferred that, because migrating settings could have been performed manually, it must have been a long-standing, routine activity.

Second, the District Court also mistakenly assumed that the description of manual migration in the patents were the same methods and systems being claimed. As such, the very basis of the decision which concluded that the Patents-in-Suit rested upon an abstract idea finds no support in the record, or in a proper reading of the patents' claims. The methods and systems claimed by Tranxition use a completely different process that bears no resemblance to any purported "manual" process that the District Court relied upon. According to the District Court, because it was possible to migrate some settings by hand, the Asserted Claims are patent ineligible abstract ideas. (JA0014.) The District Court, however, erred as a matter of law in broadly concluding that anything that can be performed "manually" is precluded from patent protection.

The District Court improperly adopted a theory that there was a "manual" process that performed the same steps claimed in Tranxition's patents. Citing from

40

specification of the '877 Patent that "[a]ll but the most rudimentary pieces of 'the migration process' are done by hand. This requires many hours of hands-on time," the District Court relied on the inaccurate premise that a reference to migration-by-hand necessarily leads to the District Court's conclusion that the "invention is directed at a practice that was well-known, conventional, and routine at the time of the invention."  (JA0014.)   However, the District Court's conclusion is also inconsistent with the language of the specification, which discloses that the invention *seeks to avoid* the processes of "manual" migration: "It is also desirable to provide an automatic migration of configuration settings from an old computing system to a new computing system *without using a time consuming manual migration process*."  (JA0082, '877 Patent, col. 2, ll. 39-44 (emphasis added).)

The District Court conflated the problems identified in the specification with the solution embodied by the Patents-in-Suit, compounding its error by improperly concluding that migration-by-hand was "well-known, conventional, and routine" at the time of the invention.  (*See* JA0011,14.)  The Asserted Claims teach a novel way to transition a computer's personality from a source computer to a target computer – *i.e.*, a patentable application of known concepts.  *See Bilski*, 561 U.S. at 611; *Diehr*, 450 U.S. at 187; *see also Alice*, 134 S. Ct. at 2355.  Lenovo offered no evidence that the Asserted Claims involve a longstanding practice.  *StoneEagle Services, Inc. v. Pay-Plus Solutions, Inc.*, No. 8:13-CV-2240-T-33MAP, 2015

41

4042097, at *8 (M.D. Fla. July 1, 2015 ) (JA5252) ("Defendants have not provided clear and convincing evidence to establish that the prior arts engaged in the practice implemented by the Patents or that the claims at issue involve a fundamental economic practice, thus making them unpatentable subject matter.").

Further, "manual performance" is increasingly a red herring in *Alice* abstraction analysis. As one Court has stated, "*Alice* focuses the inquiry, however, on whether the claim is directed to an abstract idea, not on whether the claim could be performed by a human." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 821 (E.D. Va. 2014) (JA5381). The manual performance analogy relied upon by the District Court, however, has been chastised by courts for being "unhelpful":

> Many inventions could be theorized with pencil and paper, but pencil and paper can rarely produce the actual effect of the invention.
>
> * * *
>
> The problems of pencil-and-paper analysis are heightened in the context of software, which necessarily uses algorithms to achieve its goals. Pencil-and-paper analysis can mislead courts into ignoring a key fact: although a computer performs the same math as a human, a human cannot always achieve the same results as a computer.

*California Inst. of Tech. v. Hughes Commun. Inc.,* 59 F. Supp. 3d 974, 994-995 (C.D. Cal. 2014) (JA5040). Manual performance is no touchstone at all. Here, the activity of transitioning computer personality did not come before computers – it

42

arises **because of** computers. The District Court's reliance on the manual performance analogy is therefore inapplicable. And it is also clear that the inventions described in the Patents-in-Suit are entirely different than any purported "manual migration."

The District Court tautologically determined that the Asserted Claims are abstract ideas merely because it was possible to "manually" migrate some settings, even though the transitioning claims in the Patents-in-Suit bear no resemblance to any "manual migration" methods. However, the District Court erred as a matter of law because Tranxition demonstrated that it could reasonably be inferred from the Patents-in-Suit and the evidence proffered by Kelly Mackin, one of the inventors of the Patents-in-Suit, that the transitioning of settings as claimed by the Patents-in-Suit was not previously performed and that there was no ordered process for dynamically transitioning settings in the manner described by the Patents-in-Suit before the patents. Accordingly, the District Court fundamentally erred in concluding that the asserted claims of Tranxition's patents are ineligible under 35 U.S.C. § 101.

On its motion for summary judgment, Lenovo carried the burden of demonstrating invalidity as a matter of law and it failed to meet that burden. Yet, by denying Tranxition every reasonable, favorable inference, the District Court in

essence shifted the burden to Tranxition to demonstrate that the Patents-in-Suit are not abstract and, in turn, committed reversible error.

### 4. The Patents-In-Suit Comply And Are Consistent With The USPTO's Examples Of Claims That Do Not Constitute Abstract Ideas.

The District Court's conclusion is also inconsistent with USPTO's 2014 Interim Eligibility Guidance, explaining whether certain claims are directed to an abstract idea.[8]  The USPTO's analysis of the hypothetical method claim for protecting a computer from an electronic communication containing malicious code, which is similar in many respect to the independent claims in the Patents-in-Suit, determined that the claim did "not recite an abstract idea" but instead was "directed towards performing isolation and eradication of computer viruses, worms, and other malicious code, a concept inextricably tied to computer technology and distinct from the types of concepts found by the courts to be abstract."  (JA5327, JA5329.)  Similarly, the Patents-in-Suit relate to transitioning configuration settings between computer systems and are directed to isolating active configuration settings and extracting those settings to create a transition

---

[8] http://www.uspto.gov/patents/law/exam/abstract_idea_examples.pdf.  The USPTO "issued the 2014 Interim Guidance on Patent Subject Matter Eligibility (Interim Eligibility Guidance) for USPTO personnel to use when determining subject matter eligibility under 35 U.S.C. [§] 101 in view of recent decisions by the U.S. Supreme Court, including Alice Corp., Myriad, and Mayo." http://www.uspto.gov/patent/laws-and-regulations/examination-policy/2014-interim-guidance-subject-matter-eligibility-0.

package to transition the desired configuration settings from the source computing system to be functional on the target system.  (*See* JA0082, '877 Patent, col. 3, ll. 27-36.)  The Patents-in-Suit are "inextricably tied to computer technology." (JA5329.)  Thus, the Asserted Claims are in fact, as they had been before, patent-eligible and not directed to an abstract idea.

### G.    By Failing To Consider The Claims As An Ordered Combination, The District Court Erroneously Found That None Of Nearly 40 Claims At-Issue Contain An Inventive Concept.

After erroneously concluding that the Asserted Claims are drawn to an abstract idea, the District Court further erred in concluding that the Asserted Claims do not contain an inventive concept by ignoring the claims *as ordered combinations*.  Not only are the Asserted Claims anything but abstract, even a cursory search of the Asserted Claims reveals the inventive concepts in the Patents-in-Suit.  The Asserted Claims teach how to locate computer personality settings, organize those settings into a list, allow the inclusion or exclusion of settings on the list, store the settings, manipulate the settings to prepare the settings for transitioning, and transition the settings to be operative on a target computer, thereby transforming the function and operation of the target computer and, in turn, transforming the computer.

Like the Asserted Claims, claims directed towards a specific problem in the art and, through the patented systems and methods, improved functionality have all

been held to disclose inventive concepts and were, therefore, patent eligible subject matter. *See, e.g.*, *Research Corp. Technologies Inc. v. Microsoft Corp.*, 627 F.3d 859, 868 (claimed "invention presents functional and palpable applications in the field of computer technology"); *DDR Holdings*, 773 F.3d at 1257 (claims directed to a computer solution "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks").

As it did with Step One, by denying Tranxition every reasonable, favorable inference, the District Court effectively shifted the burden of proof to Tranxition to demonstrate that the claims have inventive concepts when, instead, Lenovo carried the burden of proving, as a matter of law, that no reading of the Patents-in-Suit could possibly reveal any inventive concepts. *Cf. A Pty Ltd. v. Facebook, Inc.*, No. 1-15-CV-156 RP, 2015 WL 5883331, at *6 (W.D. Tex. Oct. 8, 2015) (JA5024) ; *Modern Telecom Sys. LLC v. Earthlink, Inc.*, No. SA CV 14-0347-DOC, 2015 WL 1239992, at *9 (C.D. Cal. Mar. 17, 2015) (JA5237).

## 1.    The District Court Conclusorily Read The Claim Elements In Isolation – Not As An Ordered Combination.

Step Two of the *Alice* analysis is to determine "whether the elements of each claim, either individually ***or as an ordered combination***, state an 'inventive concept' . . . ." (emphasis added) (JA0018.)  The District Court initially stated, but then completely ignored its own explanation of the controlling law.

For example, when it analyzed Claim 1 of the '877 Patent, the District Court addressed isolated portions of claim elements, quoting less and less of the actual claim element as it progressed further into its analysis. (*See* JA0019.) For the first step of Claim 1, the District Court conclusorily likened the step to "data gathering." (*Id.*) But, "data gathering" is not what is claimed. And, despite citing its construction of the term "extraction plan" as a "plan . . . that includes a full list. . . ," the District Court dismissively boiled down the "generating an extraction plan" step to "making a list." (*Id.*) The Court then glossed over the remaining steps without discussing the entire claim element: "[t]he other claimed limitations such as 'extracting,' 'retrieving,' and 'transitioning' similarly fail to state an inventive concept." (*Id.*) Importantly, the District Court's reasoning was undercut by its own claim construction ruling.

Claim 1 not only discloses meaningful limitations, like the claims in *Smartflash LLC v. Apple Inc.*, 6:13CV447-JRG-KNM, 2015 WL 661174, at *8-9 (E.D. Tex. Feb. 13, 2015) (JA5394-95) (holding claims relating data storage and access systems for paying for and downloading digital content not invalid), but also discloses unconventional steps, as in *CalTech*, for "preparing configuration settings" that include: "providing configuration information about configuration settings"; "generating an extraction plan that identifies configuration settings to be extracted from the source computing system"; "extracting the active configuration

settings of the extraction plan from the source computing system"; "generating a transition plan that identifies configuration settings to be transferred from the source computing system to the target computing system"; "retrieving the extracted configuration settings" and "transitioning one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system." (*See* JA0090, '877 Patent, col. 17, ll. 31-62.)

The District Court simply overlooked, ignored or misunderstood the distinction between migrating computer settings generally and the specific transitioning limitations comprising the methods and systems claimed in the Patents-in-Suit. Migrating without transitioning would create (in many cases) configuration settings on the target system that do not work in the same manner as in the source computer, causing many to revert to their default settings and in some cases the software applications themselves to potentially not work at all. These "broken settings" would clearly cause the applications and/or operating system on the target computer to work differently than on the source.

The District Court also committed the error rejected by the court in *Smartflash*, arbitrarily "boil[ing] down the claims" to something generic. 2015 WL 661174, at *8 (JA5393). Specifically, the District Court boiled down Claim 1 to "locat[ing] the settings he or she wanted to transfer from the old computer";

48

"'extract[ing]' those settings from the old computer, and then turn[ing] to the new computer and locate where the similar setting is stored there"; and "'transition[ing]" the old setting to the new system by applying it and concluding that "this is exactly the process described in Tranxition's patents." (JA0022.) However, the District Court's reasoning is completely divorced from the claim language itself; rather than quote, or even cite Claim 1, the court only referenced the **specification** – i.e., the '877 Patent generally. (*Id.*)

Importantly, the District Court failed to apply controlling Supreme Court authority requiring courts to **search** for an inventive concept in the elements "as an ordered combination." (*See* JA0018.) Even when the District Court found (errantly) that each element individually lacked an inventive concept, it had the responsibility to search for the inventive concept in the ordered combination of each of the claims. *See Alice*, 134 S. Ct. at 2355 (citing *Mayo*, 132 S. Ct. at 1298, 1297); *DDR Holdings*, 773 F.3d at 1259. "When viewing claim elements as an ordered combination, the court should not ignore the presence of any element, even if the element, viewed separately, is abstract." *CalTech.*, 59 F. Supp. 3d at 980 (JA5030). "[C]ourts should remember that a series of conventional elements may together form an unconventional, patentable combination." *Id.*

The District Court also mistakenly concluded that claims 2-10 "merely describe in generic and abstract terms how to perform the first steps in the manual

49

migration process." (JA0024.) Similarly, the District Court dismissed claims 11, 12 and 15 as "generic." (JA0024-25.) Rather than repeat Claim 1, however, dependent claims 2-12 and 15 add greater specificity to Claim 1, detailing a specific implementation, settings to be transitioned, and the types of settings. *Intellectual. Ventures I, LLC v. Motorola Mobility LLC*, 81 F. Supp. 3d 356, 369 (D. Del. 2015), *aff'd* 792 F.3d 1363 (Fed. Cir. 2015) (JA5194). In fact, Claims 2-12 and 15 disclose inventive concepts by transforming the method of Claim 1 into an inventive ***application*** of known concepts. *See Alice*, 134 S. Ct. at 2358.

The District Court performed the same superficial analysis on Claims 16-26 and 29, selectively focusing on claim terms rather than the considering the entire claim and all of its elements as an ordered combination. Although Claim 16 recites three applications that each performs specific operations, the District Court errantly concluded that the applications are "generic applications" without providing a basis for characterizing them as "generic." (JA0025.) The District Court also repeated the same error it committed with Claim 1; the actual claim language of Claim 16, and its dependent claims, recites applications that perform particular steps, which are specific elements ignored by the District Court. *See Fairfield Indus., Inc. v. Wireless Seismic, Inc.*, No. 4:14–CV–2972, 2014 WL 7342525, at *5-6 (S.D. Tex. Dec. 23, 2014) (JA5163-4).

Viewed as an ordered combination of elements, Claim 30 recites a unique data structure containing a very particular set of configuration settings to be transitioned to the target computer:  settings for "user preferences that affect the appearance and operation of a basic windowed user interface"; "visual elements, user interface hardware settings, and windows preferences configuration information"; "service providers, services, clients, and domains configuration information"; "accounts, browser, and network addresses configuration information"; "mail application and mail application settings configuration information"; "application and application settings configuration information"; and "registry settings configuration information."  (JA0091, col. 20, ll. 18-34.)  The Patents-in Suit describe a data-driven application that processes computer-setting-information.  Claim 30 structures and defines the principal data to feed the application.

Claim 30 is similar to the claim in *DataTern, Inc. v. Microstrategy, Inc.*, where the court found that the patent at issue was directed to solving a specific problem arising in the realm of computers, reasoning that "object-oriented programs exist only in the realm of computers, and relational databases are utilized primarily, if not exclusively, on computers."  No. CV 11-11970-FDS, 2015 WL 5190715, at *8 (D. Mass. Sept. 4, 2015) (JA5104).  The Claim 30 data structure

allows the transition rules to be flexible and comprehensive, changing as computers change.[9]

The District Court, however, erroneously found that none of the claims in the '766 Patent contain an inventive concept with only a single sentence of analysis. (*See* JA0026.) Furthermore, the District Court focused solely on the verbs in the claims, ignoring the claims as a whole or as an ordered combination.

> **2.     The Most Directly On-Point Case Is *DDR Holdings, LLC V. Hotels.Com, L.P.*, Which The District Court Attempted To Distinguish By Relying On Conclusory, Unsupported Factual Inferences In Favor Of Lenovo And Novell.**

Not only did it ignore the actual claim language, the District Court misapplied Step Two of *Alice* (which it should not have needed at all) by focusing on the District Court's perception of an abstract idea as opposed to actual and legitimate limitations of the Asserted Claims, mistakenly believing that "[t]he activity at issue in *DDR Holdings* [ ] could only be performed by a computer. The process was 'necessarily rooted in computer technology' because there is no manual process that could achieve the same result—there is no way for a person to display a hybrid website." (JA0022.)

---

[9] The District Court also applied the wrong analysis to Claim 30, conflating Step One with Step Two. (*See* JA0026.) The District Court cited *Content Extraction* for the proposition that Claim 30 lacked an inventive concept; yet, in the text quoted, the court was only addressing Step One – determining whether a claim was directed to an abstract idea. *See Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 ("Applying Mayo/Alice step one, . . . .").

In *DDR Holdings, supra*, the Federal Circuit, closely adhering to *Alice*'s limited holding, upheld the patent eligibility of claims directed to a computer solution "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." 773 F.3d at 1257. This decision confirms that an inventive concept can be established by something that targets and improves existing technological processes for a specific problem in a variety of fields of invention. *Id.* Tranxition not only improved an existing process, but Tranxition's process replaces as obsolete any previous process with the claimed process. Like the claims in *DDR Holdings*, the Asserted Claims in the Patents-in-Suit recite specific ways to automate the transitioning of multiple active configuration settings on a source computer to be transferred to a target computer in order to solve a problem faced by computer users using multiple computers (*e.g.*, an old computer and a new computer).

The District Court, however, declined to follow *DDR Holdings*, maintaining that there was "a key difference between Tranxition's claims to an automatic migration process and the claims in *DDR Holdings*." (JA0021.) However, the District Court's conclusory attempt to distinguish *DDR Holdings* ignored the actual claims in the Patents-in-Suit. In concluding that "[t]here is, however, a way for a human being to manually transfer settings from one computer to another" (JA0022 ), the District Court focused on its own conclusion of abstractness rather

than the actual claims of the patents.  (*Id.*)  The District Court never addressed how *the actual claim language* could be performed "manually," which is where the parallels to *DDR Holdings* lie.  The District Court's distinction between the claims in *DDR Holdings* in the Patents-in-Suit was arbitrary and unsupported, exacerbating the court's errors in failing to find inventive concepts in any of the Asserted Claims.

### 3.    The Court Selectively Discussed Portions Of The Two Mackin Declarations But Ignored Other Portions Creating Issues Of Material Fact As To Whether Migration Was A Long-Standing Practice.

The District Court also committed reversible error by failing to apply the clear and convincing standard when faced with factual issues.  By abandoning the clear and convincing standard, the District Court improperly rejected Ms. Mackin's unrebutted explanation[10] of the state of transitioning in order to conclude that the claims were nothing more than "well-understood, routine, conventional activity, previously engaged in by those in the field."  *See Mayo*, 132 S. Ct. at 1299.

The Court ignored a multitude of facts demonstrating that the Asserted Claims were not "well-known, conventional, and routine" at the time of the invention:

---

[10] The District Court acknowledged at the hearing at the Mackin Declaration provided relevant evidence regarding "the state of technology" at the time of the invention.  (JA4260, Hr. Tr. 56:17-24.)

- "A person of skill in the art would understand that, because this is a computer solution to a computer problem, the claims in the Patents-in-Suit cannot be entirely performed manually but require the use of a computer."  (JA3174, ¶ 15.)
- "The Asserted Claims teach using methods and systems to migrate a computer personality using rules that are selected and executed based upon the computer's individual personality. Neither these steps nor the technology itself were -purely conventional" at the time of Patents-in-Suit.  (*Id.* at ¶ 17.)
- "The Patents-in-Suit teach selecting and implementing transition rules based upon a combination of the unique settings of a particular source computer. Only a computer that has been specially programmed with specific applications can carry out the method and systems that are claimed. Without this special programming, a general purpose computer cannot carry out the claimed methods and systems."  (*Id.* at ¶ 18.)
- "The Patents-in-Suit transform the settings into different data."  (*Id.* at ¶ 19.)
- "The Patents-in-Suit extract and transform configuration settings, some of which are unreadable to a person that is not highly-trained in computers, from a source computing system into a format that is used to create a translation package which, in turn, infuses a target computing system with the extracted and transformed configuration settings."  (JA3154, ¶ 20.)

Here, the claimed inventions in the Patents-in-Suit are "more complex than what could be done by humans and transforms the claimed invention from an abstract idea simply automated by a computer into an inventive concept." *Veracode, Inc. v. Appthority, Inc.*, No. CV 12-10487-DPW, 2015 WL 5749435, at *16 (D. Mass. Sept. 30, 2015) (JA5280).  The claimed inventions also exceed "mere automation of a well-known process by harnessing and improving upon the unique properties and complex capacities of computer technology" resulting in a transformation that was unobtainable using existing methods.  *Id.* at *17.

Accordingly, the District Court erred by ignoring evidence of inventive concepts. *See StoneEagle*, 2015 WL 4042097, at \*4 (JA5249).

Moreover, the District Court erred in interpreting Ms. Mackin's declarations, denying Tranxition the favorable inferences to which it is entitled as a matter of law and instead arriving at an internally inconsistent conclusion.  The District Court failed to give Ms. Mackin's factual averments any weight whatsoever, dismissing her testimonial evidence based on the assumption that "the asserted claims do not require that level of complexity." (JA0015.)  The District Court reasoned that "[w]hatever complexity Tranxition and Ms. Mackin believes [*sic*] its patents may have envisioned, the patents plainly lay claim to a simple migration involving *only one setting*." (*Id.* (emphasis added original).)

First, the District Court misread Claim 1 as being limited to "only one setting" (*id.*) while the actual claim language claims "at least one" (*see* JA0090, '877 Patent, col. 17, ll. 29-62).  The District Court's error cannot be overstated – the court afforded ***no weight*** to Ms. Mackin's testimony regarding the complexity of the Patents-in-Suit because it erroneously concluded that the patents claimed nothing more than simple migration of only one setting.  Moreover, by misreading the Patents-in-Suit as limited to migrating one setting, the District Court failed to acknowledge the complexity of methods and systems capable of transitioning not only one, but manifold settings buried in applications and operating systems.

56

The District Court's second error – reliance on *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014) (JA5240) – cascades from its first error.  Unlike Claim 1, which, in part, defines the *minimum* number of settings required, the claims in *Planet Bingo* were found by this Court to define a *maximum*: "[a]t most, the claims require[d] 'two sets of Bingo numbers,' 'a player,' and 'a manager.'"  *Id.* (internal citation omitted).  Moreover, unlike in *Planet Bingo*, the dynamic nature of Patents-in-Suit teaches self-awareness as to the number of computer settings, which is determined when the various lists are generated.  Thus, the District Court's conclusion that Claim 1 lacks an inventive concept was based on a misreading of Claim 1 and a flawed application of the law.

With respect to the standard for deciding summary judgment motions, the factual proffer provided by Ms. Mackin demonstrates that it is sufficiently plausible that the Asserted Claims go beyond requiring a generic computer to perform generic computer functions and, therefore, the record below presented issues of fact on patent eligibility.  *See Kenexa BrassRing, Inc. v. HireAbility.com, LLC*, No. CIV.A. 12-10943-FDS, 2015 WL 1943826, at *7 (D. Mass. Apr. 28, 2015) (JA5203); *TQP Dev., LLC v. Intuit Inc.*, No. 2:12-CV-180-WCB, 2014 WL 651935, at *5 (E.D. Tex. Feb. 19, 2014) (JA5260) (". . . TQP has offered evidence to the contrary, in the form of an expert's declaration stating that a person of skill in the art would understand that the claimed method could not be performed in the

mind but would require the use of a machine.  That factual dispute by itself is enough to foreclose the entry of summary judgment in the defendants' favor on the present record.").  Summary judgment should have been denied based on the factual disputes alone regarding inventive concepts.

> **4.    Moreover, The Patents-In-Suit Comply And Are Consistent With The USPTO's July 2015 Update On Subject Matter Eligibility With Respect To Step Two.**

As with showing that the Asserted Claims are ***not*** directed to abstract ideas, recent USPTO guidance confirms that the Asserted Claims indeed contain inventive concepts as well as highlights the District Court's error in failing to view claim elements as an ordered combination: "when looking at the additional limitations as an ordered combination, the invention as a whole amounts to significantly more than simply organizing and comparing data."  (JA5349-50.)

As discussed above, prior to the Patents-in-Suit, the problems with transferring settings, or in shorthand "personality," were manifold.  When evaluated based upon what the claims actually recite, not merely with respect to the purported ideas upon which they are premised, it is clear that the Asserted Claims "as a whole amount[] to significantly more than simply organizing and comparing data"; they are directed to achieving a ***better*** result – transitioning a computer's personality more deeply from a source computer to a target computer in a specific manner – rather than simply reproducing the ***same*** result as human

58

activity, but more quickly.  Thus, the Asserted Claims withstand *Alice's* narrow holding because they claim a solution necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computers. Construing the Asserted Claims as an ordered combination, the Patents-in-Suit clearly provide an inventive solution to the problem of transitioning configuration settings entirely consistent with the USPTO's most recent post-*Alice* guidance.

### H.    While Not Dispositive, The Machine-Or-Transformation Test Confirms That The Patents-In-Suit Cover Patent-Eligible Subject Matter.

Although raised by Lenovo, the District Court did not reach its conclusions regarding § 101 based on the machine-or-transformation test.  Had the District Court applied this test, it would have confirmed that the Patents-in-Suit cover patent eligible subject matter.

Under the "machine-or-transformation" test, "[a] claimed process would only be patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus; or (2) it transforms a particular article into a different state or thing." *Bilski*, 561 U.S. at 600 (internal citation omitted).  The Patents-in-Suit satisfy this test under either prong.

The Federal Circuit has expressed the view that data structures can represent a "machine."  *CyberSource Corp. v. Retail Decisions, Inc,* 620 F. Supp. 2d 1068, 1079 (C.D. Cal. Mar. 27, 2009) (JA5094-5).   Further, in *Lowry*, the Federal

Circuit panel expressly explained that data structures on computers are physical entities based on the electronic or magnetic arrangement in computer memory. *In re Lowry*, 32 F.3d 1579, 1583-84 (Fed. Cir. 1994). The *Lowry* panel also cautioned against the very mistake that District Court committed: "The fact that these physical changes are invisible to the eye should not tempt us to conclude that the machine has not been changed." *Lowry*, 32 F.3d at 1583 (quoting *In re Bernhart*, 417 F.2d 1395, 1400 (C.C.P.A. 1969)).

As for the second part of the test, "transformation" occurs when the claimed invention effects a physical transformation of "physical objects or substances," or at the very least things that are "representative of physical objects or substances." *See Ultramercial*, 772 F.3d at 717 (quoting *In re Bilski*, 545 F.3d 943, 963 (Fed. Cir. 2008)) (en banc), *aff'd* on other grounds, 561 U.S. 593).

Here, the Patents-in-Suit satisfy the transformation prong by transforming a target computer into a computer that looks and behaves in many respects like the source computer. For example, transformation occurs in Claim 1 of the '877 Patent: "transitioning one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system," col. 17, ll. 59-62, which takes configuration settings on a source computer and reproduces those settings on a target computer in the format needed to properly use the setting. (JA0090.)

Thus, under either the mainstay § 101 framework under *Mayo/Alice* or the
ancillary machine-or-transformation test, the Patents-in-Suit pass muster for
subject matter eligibility.  *See Abstrax, Inc. v. Dell, Inc.*, No. CIV.A.
2:07CV221DFCE, 2009 WL 3255085, at *3 (E.D. Tex. Oct. 7, 2009) (JA5370-71);
*Chamberlain Grp., Inc. v. Linear LLC*, No. 14-CV-05197, 2015 WL 4111456, at
*10 (N.D. Ill. July 7, 2015) (JA5082-83).

## I.    The District Court Improperly Concluded That The Patents-In-Suit Create Broad Preemption Concerns.

The District Court committed reversible error by relying on an inaccurate
and unfounded attorney argument to conclude that the Patents-In-Suit "risk[]
preempting the abstract idea of migrating settings from one computer to the other."
(JA0029, Opinion, p. 29.)  When the patent claims are considered together and in-
context, it is clear that they do not preempt the entire field of transitioning settings
among computers, but instead appropriately narrow forms and applications.
Indeed, the Patents-in-suit recite specific methods and systems, with appropriate
limitations, to transition a computer's personality from a source computer to a
target computer.  *See France Telecom S.A. v. Marvell Semiconductor Inc.*, 39
F.Supp.3d 1080, 1092 (JA5176); *see also CalTech*, 59 F.Supp.3d at 996 (JA5041).
Furthermore, the dependent claims in the Patents-in-Suit include "'additional
features' that ensure the claims are 'more than a drafting effort designed to

61

monopolize the [abstract idea].'" *See DDR Holdings*, 773 F.3d at 1259 (quoting *Alice*, 134 S. Ct. at 2357).

> **1.     The District Court Improperly Relied On Inaccurate Attorney Argument In Finding That The Patents-In-Suit Pose Broad Preemption Risks.**

The District Court concluded "the claims in Tranxition's patents not only threaten to preempt the 'migration process' generally, but they are so broad that they could preempt the entire field of computer data backup and restore, at least insofar as the programs written to implement backup and restore are capable of taking settings from one computer and applying them to another." (JA0030-31.) However, the District Court erred in supporting this conclusion with Lenovo's *attorney's* description of the functionality of Lenovo's product Rescue and Recovery. (JA0030.) As Tranxition amply established in its Motion to Strike, these unsupported attorney statements upon which the District Court relied were wholly inaccurate. (JA2544.)

The District Court erroneously concluded that the Patents-in-Suit threaten to "preempt the entire field of computer data backup and restore . . . ." (JA0030-31.) However, rather than broadly claiming that the accused Rescue and Recovery infringes the Patents-in-Suit merely because it restores computer settings, Tranxition specified certain components and features that infringe the Patents-in-Suit. In particular, Tranxition cited to SMA Lite "which is integrated into Rescue

and Recovery, to access configuration settings, such as registry settings" and allows for the migration of those settings, as evidence that Rescue and Recovery infringes the Patents-in-Suit. (JA4074.) In other words, as is clear and unrebutted in the record, Lenovo's accused "Rescue and Recovery" is included in the instant suit because it integrates an infringing "Lite" version of Lenovo's accused computer personality-transitioning software. There is nothing in the record to indicate that any other recovery programs do the same.

In any event, attorney argument is not evidence, and, therefore, is irrelevant to preemption analysis, or any other factual issue. *Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997); *Rus v. Gonzales*, 180 Fed. Appx. 711, 712 (9th Cir. 2006) (JA5243). Accordingly, the District Court's preemption concerns, based on Lenovo's attorney argument, were unfounded.

**2.    The Coexistence Of Other Patents Claiming Methods And Systems For Transitioning Settings Demonstrates That The Patents-In-Suit Do Not Preempt The Entire Field.**

Prior art referenced in the '766 Patent's file history and even a Lenovo patent affirm that the Patents-in-Suit do not monopolize the entire field of transitioning computer settings—but rather only claim a particular method of doing so.

In prosecuting the patent, Tranxition successfully distinguished the Hunter reference from the '766 Patent claims, despite the fact that the Hunter reference, as

explained in applicants' remarks, "describes a way to transfer application settings (e.g. template files and toolbar-related settings) from a first computer to a second computer." (JA0324.) Specifically, as Tranxition argued, the Hunter reference only "generally describes transferring settings from a first computer to a second computer using environment variables and/or tokens, [but] Hunter fails to teach or suggest manipulating or calculating configuration settings." (JA0324.)

The fact that the '766 Patent issued despite the fact that this USPTO had to reconcile the claims with those of another patent that claimed transferring settings illustrates how the Patents-in-Suit are limited to only specific methods of transitioning settings claimed and do not risk preventing others from finding new, innovative methods for transitioning settings.

Similarly, U.S. Patent No. 6,182,212 (the '212 Patent), asserted by Lenovo in a related matter, by its own title, is directed to the field of migrating settings: "Method and System for Automated Migration of User Setting to a Replacement Computer System." The fact that the USPTO issued the Hunter reference and the '212 Patent before issuing the Patents-in-Suit demonstrates that the Patents-in-Suit do not "risk[] preempting the abstract idea of migrating settings from one computer to the other." (JA0029.) It stands to reason that, if the Patents-in-Suit did so, they would not be distinguishable from the Hunter reference and the '212 Patent, and

therefore, the USPTO would have rejected the Patents-in-Suit as either anticipated or obvious.

## VIII. <u>CONCLUSION</u>

Based on the foregoing, Tranxition respectfully requests that the Federal Circuit enter an order vacating the District Court's Invalidity Orders, affirming the validity of the Patents-in-Suit under § 101, construing the disputed terms as specified herein, and remanding the Lenovo and Novell Actions to the District Court for further proceedings.

Dated:  November 18, 2015                    Respectfully submitted,

                                             Arent Fox LLLP


                                             By:    /s/ *Arthur S. Beeman*
                                                    Arthur S. Beeman

                                             Arthur S. Beeman
                                             arthur.beeman@arentfox.com
                                             Joel T. Muchmore
                                             joel.muchmore@arentfox.com
                                             Arent Fox LLP
                                             55 2nd Street, 21th Floor
                                             San Francisco, CA  94105
                                             Telephone: (415) 757-5500

                                             Dayna J. Christian
                                             dayna.christian@immixlaw.com
                                             Immix Law Group PC
                                             121 S.W. Salmon Street, Suite 1000
                                             Portland, OR  97204
                                             Telephone: (503) 802-5533

                                             ATTORNEYS FOR APPELLANT
                                             TRANXITION, INC.

## CERTIFICATE OF SERVICE

I certify that on November 18, 2015, the foregoing **APPELLANT'S CORRECTED OPENING BRIEF IN SUPPORT OF ITS APPEALS OF THE DISTRICT COURT'S ORDERS ON CLAIM CONTRUCTION AND ORDERS INVALIDATING THE PATENTS-IN-SUIT AS "ABSTRACT" PURSUANT TO SECTION 101 OF THE PATENT ACT** was filed electronically using the Court's CM/ECF system, which will give notice of the filing to counsel for the Appellees.


 /s/    *Arthur S. Beeman*
Arthur S. Beeman
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because Section II to VIII of this brief contains 13,904 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman font size 14.

 /s/    *Arthur S. Beeman*
Arthur S. Beeman
Attorney for Appellant