# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

2015-1907, -1941, -1958

## TRANXITION, INC.,

*Plaintiff-Appellant*,

v.

## LENOVO (UNITED STATES) INC.,

*Defendant-Appellee,*

and

## NOVELL, INC.,

*Defendant-Appellee.*

Appeals from the United States District Court for the District of Oregon in Nos. 3:12-cv-01065 and 3:12-cv-01404-HZ, Judge Marco A. Hernandez

## RESPONSE BRIEF OF LENOVO (UNITED STATES) INC.

Todd E. Landis
tlandis@akingump.com
Eric J. Klein
eklein@akingump.com
Jay K. Tatachar
jtatachar@akingump.com
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201

Fred I. Williams
fwilliams@akingump.com
600 Congress Avenue, Suite 1350
Austin, Texas 78701

Emily C. Johnson
johnsone@akingump.com
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC  20036-1564

*Counsel for Lenovo (United States) Inc.*

Form 9

FORM 9.   Certificate of Interest

## UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Tranxition, Inc. _____ v. Lenovo (United States) Inc. _____

No. 15-1907, 15-1941

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)

Lenovo (United States) Inc. ___ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

Lenovo (United States) Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

n/a

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Lenovo Holding Company, Inc. owns 100% of Lenovo (United States) Inc.'s stock.

4.  ☐   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Fred I. Williams, Todd E. Landis, Eric J. Klein, Emily C. Johnson, and Jayant K. Tatachar of Akin Gump Strauss Hauer & Feld LLP; Kenneth L. Walhood of Blunck & Walhood, LLC

9/8/2015 _____
Date

/s/ Fred I. Williams _____
Signature of counsel

Fred I. Williams _____
Printed name of counsel

Please Note: All questions must be answered
cc: All Counsel of Record _____

124

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES ................................................................1

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF ISSUES ON APPEAL ..........................................................2

STATEMENT OF THE CASE ......................................................................3

  A. The Asserted Patents ..................................................................3

  B. Procedural History ....................................................................9

SUMMARY OF THE ARGUMENT ................................................................22

STANDARD OF REVIEW ........................................................................24

ARGUMENT.........................................................................................25

 I. THE ASSERTED PATENT CLAIMS COVER PATENT-
  INELIGIBLE SUBJECT MATTER................................................25

  A. The Asserted Patent Claims Cover an Abstract Idea. ............26

   1. *The district court's abstract idea formulation
    captures the purpose of the patent claims.* .................27

   2. *The district court's analysis of manual migration
    is consistent with the intrinsic evidence.*......................29

   3. *PTO Guidelines are not relevant to this Court's
    invalidity determination.* .............................................33

  B. The Patent Claims Do Not Contain an Inventive
   Concept...............................................................................35

   1. *The district court properly analyzed the claims as
    an ordered combination.* .............................................35

   2. *DDR Holdings Is Distinguishable.* .............................41

   3. *There Was No Genuine Dispute of Material Fact
    Regarding Migration.* ..................................................45

C.    The Machine or Transformation Test Cannot Save the Claims..................................................................47

D.    The District Court Appropriately Found That the Asserted Claims Present Substantial Preemption Concerns. ............................................................49

E.    The District Court Applied the Correct Standard in Assessing Invalidity Under Section 101................................51

II.    THE *MARKMAN* ORDER APPEAL SHOULD BE DISMISSED FOR LACK OF JURISDICTION.............................52

III.    THE DISTRICT COURT CORRECTLY CONSTRUED THE DISPUTED TERMS OF THE ASSERTED PATENT CLAIMS. ........................................................54

A.    The District Court Correctly Construed "Personality Object" by Considering Prosecution History Disclaimer.......55

B.    The District Court's Construction of "Extraction Plan" Comports with the Express Definition Supplied in the Specification. ....................................................56

C.    The District Court's Construction of "Value" is Consistent with the Explicit Teachings of the Specification. ....................................................58

D.    The Court Correctly Construed the "Manipulating" Term in Accordance with the Specification and Prosecution History............................................58

E.    The District Court Correctly Construed the "Transitioning" Term in Accordance with the Specification and Claim Language Itself..............................60

CONCLUSION ................................................................61

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Accenture Global Services GmbH v. Guidewire Software, Inc.*,
　728 F.3d 1336 (Fed. Cir. 2013) ...................................................................28

*AdjustaCam, LLC v. Newegg, Inc.*,
　No. 2013-1665, 2015 WL 5449927 (Fed. Cir. Sept. 17, 2015) ........................53

*Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*,
　607 F.3d 817 (Fed. Cir. 2010) ....................................................................53

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
　134 S. Ct. 2347 (2014) ...........................................................................*passim*

*Allvoice Devs. US, LLC v. Microsoft Corp.*,
　No. 2014-1258, 2015 U.S. App. LEXIS 8476 (Fed. Cir. May 22, 2015) ..........36

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
　788 F.3d 1371 (Fed. Cir. 2015) ..................................................................50

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
　713 F.3d 1090 (Fed. Cir. 2013) ..................................................................55

*Bos. Scientific Corp. v. Johnson & Johnson*,
　647 F.3d 1353 (Fed. Cir. 2011) ..................................................................24

*Broadcast Innovation, L.L.C. v. Charter Comms., Inc.*,
　420 F.3d 1364 (Fed. Cir. 2005) ..................................................................54

*buySAFE, Inc. v. Google, Inc.*,
　765 F.3d 1350 (Fed. Cir. 2014) .......................................................32, 33, 43

*Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*,
　723 F.3d 1376 (Fed. Cir. 2013) ..................................................................24

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
　776 F.3d 1343 (Fed. Cir. 2014) .......................................................32, 34, 35

*CyberSource Corp. v. Retail Decisions, Inc.*,
　654 F.3d 1366 (Fed. Cir. 2011) ..............................................................*passim*

*DataTern, Inc. v. Microstrategy, Inc.,*
   No. CV 11-11970-FDS, 2015 WL 5190715 (D. Mass. Sept. 4, 2015)..............39

*DDR Holdings, LLC v. Hotels.com, L.P.,*
   773 F.3d 1245 (Fed. Cir. 2014) ....................................................*passim*

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) ....................................................*passim*

*Fresenius USA, Inc. v. Baxter Int'l, Inc.,*
   582 F.3d 1288 (Fed. Cir. 2009) ................................................33, 55

*Gametek LLC v. Zynga, Inc.,*
   No. 13-2546, 2014 WL 1665090 (N.D. Ca. Apr. 25, 2014)........................51, 41

*Gant v. United States*,
   417 F.3d 1328 (Fed. Cir. 2005) ........................................................53

*Howmedica Osteonics Corp. v. Wright Medical Technology, Inc.*,
   540 F.3d 1337 (Fed. Cir. 2008) ........................................................46

*In re BRCA1– and BRCA2–Based Hereditary Cancer Test Patent Litig.*,
   774 F.3d 755 (Fed. Cir. 2014) ..........................................................25

*In re Cuozzo Speed Techs., LLC,*
   793 F.3d 1268 (Fed. Cir. 2015) ........................................................25

*In re TLI Commcn's LLC Patent Litig.*,
   87 F. Supp. 3d 773 (E.D. Va. 2015) ..................................................28

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) ........................................................34

*Jang v. Boston Scientific Corp.*,
   532 F.3d 1330 (Fed. Cir. 2008) ........................................................54

*Kraft Goods, Inc. v. Int'l Trading Co.*,
   203 F.3d 1362 (Fed. Cir. 2000) ........................................................57

*Leever v. Carson City*,
   360 F.3d 1014 (9th Cir. 2004) ..........................................................24

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370 (1996) ................................................................................*passim*

*Mass. Inst. Of Tech. v. Abacus Software*,
   462 F.3d 1344 (Fed. Cir. 2006) ........................................................52

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
   132 S. Ct. 1289 (2012) ........................................................9, 49, 50

*Microsoft Corp. v. i4i Ltd. P'ship*,
   131 S. Ct. 2238 (2011) ........................................................51

*Microsoft Corp. v. Multi–Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004) ........................................................56

*Mikkilineni v. Stoll*,
   410 F. App'x 311 (Fed. Cir. 2010) ........................................................33

*Morales v. Square, Inc.*,
   75 F. Supp. 3d 716 (W.D. Tex. 2014) ........................................................51

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
   No. 2015-1415, 2016 WL 362415 (Fed. Cir. Jan. 20, 2016) ......................33, 46

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) ........................................................42, 44

*Palmer v. Barram*,
   184 F.3d 1373 (Fed. Cir. 1999) ........................................................25

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ........................................................55

*Planet Bingo, LLC v. VKGS LLC*,
   576 F. App'x 1005 (Fed. Cir. 2014) ........................................................31, 44, 45

*Sage Prods. Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997) ........................................................33

*SanDisk Corp. V. Kingston Tech. Co., Inc.*,
   695 F.3d 1348 (Fed. Cir. 2012) ........................................................52

*Smartflash LLC v. Apple Inc.*,
   No. 6:13CV447-JRG-KNM, 2015 WL 661174 (E.D. Tex. Feb. 13, 2015).......37

*SmithKline Beecham Corp. v. Apotex Corp.*,
   439 F.3d 1312 (Fed. Cir. 2006) .........................................................................40

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
   135 S. Ct. 831 (2015).................................................................................25, 26

*Thomas v. Ponder*,
   611 F.3d 1144 (9th Cir. 2010).......................................................................25

*Ultramercial, Inc. v. Hulu LLC*,
   772 F.3d 709 (Fed. Cir. 2014)..........................................................35, 47, 48

*United States v. Dunkel*,
   927 F.2d 955 (7th Cir. 1991)........................................................................53

*United States v. Ford Motor Co.*,
   463 F.3d 1267 (Fed. Cir. 2006) ...................................................................53

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) .....................................................................57

*Walker Digital, LLC v. Google, Inc.*,
   66 F. Supp. 3d 501 ...............................................................................46, 49

*Wang Labs., Inc. v. Am. Online, Inc.*,
   197 F.3d 1377 (Fed. Cir. 1999) ...................................................................56

*Williams v. Paramo*,
   775 F.3d 1182 (9th Cir. 2015)......................................................................24

**STATUTES**

28 U.S.C. § 1295(a)(1) ..........................................................................................1

28 U.S.C. § 1331....................................................................................................1

28 U.S.C. §1338(a) ...............................................................................................1

35 U.S.C. § 101 ............................................................................................*passim*

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5, Appellee Lenovo (United States) Inc. ("Lenovo") states that the Court's decision in this case may directly affect or be affected by the Court's decision in *Tranxition, Inc. v. Novell, Inc.*, No. 15-1958 (Fed. Cir.), which was consolidated with this appeal. Fed. Cir. Dkt. No. 26 at 2.

Lenovo is not aware of any other appeal arising out of this action that has come before this Court or any other appellate court. Nor is Lenovo aware of any other case pending in this or any other court that will directly affect or will be directly affected by this Court's decisions in the pending appeal.

## JURISDICTIONAL STATEMENT

The U.S. District Court for the District of Oregon had jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). This Court has jurisdiction over an appeal from a final judgment of the district court under 28 U.S.C. § 1295(a)(1).

# STATEMENT OF ISSUES ON APPEAL

I.     Whether the district court correctly determined that claims 1-12, 15-26, 29 and 30 of U.S. Patent No. 6,728,877 and claims 1-3, 5-11, 15, and 42-44 of U.S. Patent No. 7,346,766 are invalid for claiming patent-ineligible subject matter under 35 U.S.C. § 101.

II.     Whether Tranxition's claim construction arguments—which have no bearing on the district court's final invalidity judgment—are unreviewable and should be dismissed for lack of jurisdiction.

III.     If the claim constructions are reviewable, whether the district court correctly construed the "personality object," "extraction plan," "active configuration settings," "value," "transitioning," and "manipulating" claim terms, consistent with the intrinsic evidence.

## STATEMENT OF THE CASE

### A.     The Asserted Patents

The '877 and '766 patents ("Asserted Patents" or "patents") recite the same basic concept:  "a method and system for automatic transitioning of configuration settings among computer systems."  (JA0082, col. 1, ll. 9-21).  The patents explain that "in today's world, technology changes very quickly, [and] it is very common to replace an old computer system every few years with a new computing system."  (JA0082, col. 1, ll. 24-26).  The patents describe a problem with the transition:  "computer users often spend significant time customizing the settings on their old computers, and would like to transfer many of those settings to their new computers."  (JA0003).

The patents recognize that people have been transferring "old configuration settings to new computer systems" for many years.  (JA0082, col. 2, ll. 1-2).  The prior art migration processes were purportedly manual, requiring "many hours of hands-on time, with lost productivity and a 'start from scratch' resignation."  (JA0082, col. 2, ll. 1-12).  The patents claim that "[m]any users often decide to stick with an obsolete old computer system rather than wrestle migration and manual reconfiguration required for a new computer system."  (JA0082, col. 2, ll. 9-13).  As in any human process, the transitioning of the settings from one system to the other is "prone to errors that lead to user frustration."  (JA0082, col. 2, ll. 19-

21).

The patents address this problem by purportedly "automatically determin[ing] configuration settings customized by a user or network administrator on a[n] old computer system," and providing "an automatic migration of configuration settings from an old computing system to a new computing system *without using a time consuming manual migration process*." (JA0090, col. 2, ll. 38-44 (emphasis added). Thus, the disclosed system purports to improve speed and efficiency of the "time consuming manual migration process." *Id.*; *see also* (JA1716 at 6:18-23) ("[I]n practice, what would happen is a program would move hundreds or even thousands of settings at once. So conceptually, that's what makes it important, because trying to move that many settings by hand would be extremely time-consuming.").

Despite their dense language, the claims are nothing more than a sweeping general description of the migration process—they are devoid of any detail describing how Tranxition's claimed invention works. For example, claim 1, in plain terms, "describes the steps any user would take to perform the abstract idea of 'migrating' settings between computers: identify where configuration settings are stored, build a list of settings to transfer, fetch the settings from the old computer, and then manipulate the settings to match the format of the new computer." (JA0012-13). The only purported benefit of the patents is to improve

the speed and accuracy of the migration over the previously known manual processes.

The patents acknowledge that the claimed system employs a "general purpose" computer. (JA0090, col. 17, ll. 7-10) ("Various types of general purpose or specialized computer systems may be used with or perform operations in accordance with the teachings described herein."); *see also* (JA0090, col. 17, ll. 5-7) ("the programs, processes, methods and systems described herein are not related or limited to any particular type of computer or network system. The specification discloses the use of typical computer equipment, *e.g.,* computer monitor, keyboard, and mouse. (JA0085, col. 8, ll. 10-11). The system also employs typical computer protocols, "such as Hyper Text Transfer Protocol ("HTTP"), File Transfer Protocol ("FTP"), User Datagram Protocol ("UDP"), Transmission Control Protocol ("TCP"), Internet Protocol ("IP")." (JA0084, col. 6 ll. 56-59). The patents allege that the claimed methods and systems may vastly reduce transition, configuration and deployment times for end-users. (JA0083, col. 3 ll. 44-47). "The method and system may save time, resources, improve transition quality, and reduce user frustration." (JA0083, col. 3 ll. 48-50).

The patents are part of the same family.[1] They are directed to a "[m]ethod

---

[1] The '766 patent is a continuation of the patent application that later became the '877 patent. The patents share the same title, abstract, and specification. This

and system for automatically transitioning of configuration settings among computer systems." *See e.g.,* patent titles. (JA0073, JA0244). Claim 1 is representative of the asserted claims in the '877 patent (except for claim 30).[2]

Claim 1 reads as follows:

> 1.  A method in a computer system for preparing configuration settings for transfer from a source computing system to a target computing system, the method comprising:
>
> providing configuration information about configuration settings on the source computing system, the configuration information including a name and location of each configuration setting;
>
> generating an extraction plan that identifies configuration settings to be extracted from the source computing system, the generating including providing a list of configuration settings known to the source computing system and including identifying active configuration settings out of the provided list of configuration settings to be extracted from the source computing system;

---

brief largely focuses on the invalidity of the independent claims, but there are no additional limitations in the dependent claims that create patent-eligible subject matter.

[2] Dependent claims 2-13 and 15 are either directly or indirectly dependent of claim 1. Independent claim 16 of the '877 patent is directed to a "computer system" for implementing the method of claim 1. The language of claim 16 is nearly identical to claim 1 except that claim 16 discloses various "applications." (*See* JA0090, col. 18, ll. 16-21; JA0091, col. 19, ll. 1-3). Dependent claims 17-26 and 29 all depend directly or indirectly from claim 16 and specify additional features of the system such as a personality object including "information for locating" various types of "configuration settings" including windows preferences, network addresses, and mail application settings.

extracting the active configuration settings of the extraction plan from the source computing system, the extracted configuration settings being located using the provided configuration information;

generating a transition plan that identifies configuration settings to be transferred from the source computing system to the target computing system, the generating including providing active configuration settings of the extraction plan and including identifying from the active configuration settings of the extraction plan active configuration settings to be transferred from the source computing system to the target computing; and

for each active configuration setting of the transition plan,

retrieving the extracted configuration settings identified as active configuration settings of the transition plan; and

transitioning one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system.

(JA0090).

Independent claim 30 of the '877 patent relates to a "computer-readable medium" with "information for locating" certain "configuration information." Claim 30 is different than the other asserted claims of the '877 patent because it does not include limitations on extracting the configuration settings and transitioning the settings from one computer to another. *See e.g.,* (JA0090, claims 1 and 16)

The '766 patent covers a "[m]ethod and system for automatically

7

transitioning of configuration settings among computer systems." *See e.g.,* patent title. (JA0244).   Independent claims 1 and 42 are representative of the asserted claims of the '766 patent.[3]   Claim 1 reads:

> 1.    A method for preparing configuration settings of a source computing system for transitioning for use by a target computing system, the method comprising:
>
>    providing information about configuration settings of the source computing system, the information identifying locations of configuration settings;
>
>    displaying an indication of the configuration settings that can be extracted from the source computing system;
>    receiving a selection of configuration settings to be extracted from the source computing system for use by the target computing system;
>
>    extracting the selected configuration settings from the locations of the source computing system indicated by the information;
>
>    manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system; and
>
>    storing the extracted configuration settings and the at least one manipulated configuration settings on a storage device, wherein the stored configuration settings can be used by the target computing system to control its operation.

---

[3] Dependent claims 2, 3, 5-11, and 15 are either directly or indirectly dependent of claim 1 and claim the types of configuration settings extracted. Dependent claims 43 and 44 depend directly or indirectly from claim 42 and claim a "personality object" and the information included in it.

(JA0261).

Independent claim 42 of the '766 patent relates to "a method for manipulating a personality of a target computing system based on a personality of the source computer."

## B.      Procedural History

### 1.      *The Complaint*

In 2012, Tranxition filed separate patent infringement lawsuits against Lenovo and Novell, Inc. in the U.S. District Court for the District of Oregon. *See* Nos. 3:12-cv-1065-HZ ("Lenovo Case"); 3:12-cv-1404-HZ ("Novell Case"). Although the cases were separate, the district court held a joint *Markman* hearing.

### 2.      *Summary Judgment Proceedings*

In February 2015, Lenovo brought two motions seeking summary judgment of invalidity under Section 101 of the Patent Act.  Lenovo's partial motion for summary judgment attacked claim 30 of the '877 patent (JA2214-38), while Lenovo's motion for summary judgment was broader in scope, as it attacked the remaining asserted claims in both of the patents.  (*See* JA2287-324).  The Court granted both motions in July 2015, finding all asserted claims invalid for claiming patent-ineligible subject matter under 35 U.S.C. § 101 and the Supreme Court's decisions in *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289 (2012) and *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).

9

(JA0002-3).

In addressing the first step of the *Mayo/Alice* framework, the district court found that the purpose of the claims "is to move a user's custom configuration settings from one computer to another computer." (JA0011). Moreover, the district court recognized that the concept of migrating configuration settings "was a fundamental and widely-utilized process that was performed manually at the time of the invention." *Id.* The court explained that "if one looks past the dense language in the patents, it is apparent that the patents describe in very generic and abstract terms the process of transferring settings between computers." *Id.* Indeed, the district court observed there is nothing at all "specific" about claim 1: "Despite its dense language, claim 1 is a sweeping general description of the migration process—it is devoid of any detail describing how Tranxition's claimed invention works." (JA0012). To that end, claim 1 "describes the steps any user would take to perform the abstract idea of 'migrating' settings between computers." *Id.* The district court concluded that "[c]laim 1 is the very essence of an 'ordered combination of steps'. . . having no particular concrete or tangible form." (JA0013) (citing *Ultramercial, Inc. v. Hulu LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014).

The district court found that the other asserted independent claims "fare no better," because claim 16 "rehashes the identical abstract language of claim 1 for

transitioning settings between computers, but adds the additional abstractions of an unspecified "user interface application," "an extraction application" and "a transition application." (JA0017). Likewise, the district court found that claim 30 recites a "computer readable medium containing a data structure" comprised of "information for locating" the various configuration settings that a user might desire to migrate to a new computer, and that when read alone or in context, claim 30 is directed to "the abstract idea of gathering and organizing data." (JA0018).

Tranxition raised several arguments, each of which the district court squarely rejected. First, Tranxition argued that its claims "disclose a computer-based solution to a uniquely computer problem—the migration of a computer's complex personality from a source computer to a target computer," and therefore the claims did not encompass an abstract idea. (JA0013). The district court rejected that argument: "there is no requirement that the idea be 'directed to long-standing, pre-technology, conventional tasks,'. . . before it can be found as 'abstract' under step one of the Alice test." *Id.* Rather, the district court found that "the concept of migrating custom settings from an old computer to a new computer existed before Tranxition's invention," and the "patents themselves admit as much." (JA0014). Thus, Tranxition's claims are "directed at a practice that was well-known, conventional, and routine at the time of the invention." *Id.*

Next, Tranxition argued that the claims are not directed to an abstract idea

because the migration process is not manual simply because the "many hundreds of settings potentially captured and transferred cannot, as a practical matter, be migrated manually." (*See* JA3136). But although "[i]t may be true that a human could not migrate ten thousand settings by hand," the district court noted that "the asserted claims do not require that level of complexity." (JA0015). Quite the opposite, "Claim 1 of the '877 patent claims only 'transitioning *one or more* of the retrieved configuration settings.'" *Id.* (JA0090 citing col. 17, ll. 59–62) (emphasis added)). The other independent claims similarly claim only "manipulating *at least one* of the extracted configuration settings," (JA0261, col. 17, ll. 66-67) (emphasis added) and "manipulating the [sic] at least one extracted program configuration setting." (JA0263, col. 21, ll. 3-4). There was no dispute that, before the filing date of the patents, "users were engaged in a manual migration process involving at least one configuration setting," and the patents plainly "lay claim to [this] simple migration involving only one setting." (JA0015).

Under step two of the *Mayo/Alice* framework, the district court found that the asserted claims failed to state an additional feature that transforms the abstract idea of migrating settings from one computer to another into a patent-eligible invention. (JA0019). In so ruling, the court acknowledged that "[t]he primary problem with this claim is representative of the problem with all of the claims in Tranxition's patents at issue here: it is entirely devoid of any detail about how the

12

invention works." *Id.* And "[d]espite Tranxition's insistence that its patents disclose 'specific application of concepts for migrating a computer's personality,'" the court found that "upon close examination, the claims are comprised of little more than synonyms for generic conventional computer processing steps." (JA0019-20).

The court also rebuffed Tranxition's "oft-repeated argument" that it invented a "computer solution to a computer problem" and Tranxition's reliance on *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1258–59 (Fed. Cir. 2014). (JA0020). The court declined to find Tranxition's claims patent-eligible merely because they purport to solve a computer problem. (JA0021) The "key difference between Tranxition's claims to an automatic process and the claims in *DDR Holdings*" is that "Tranxition's invention is not 'necessarily rooted in computer technology' in the same sense as a server computer specially programmed to display a hybrid web page." *Id.* That is, "the nature of the process that Tranxition's invention claims . . . is a human one . . . the patents themselves explain that migration is a manual process predating the invention." *Id.* "The activity at issue in *DDR Holdings*, by contrast, could only be performed by a computer . . . there is no way for a person to display a hybrid website." (JA0022).

In considering the policy behind Section 101, the court recognized that "[a] patent over Tranxition's claimed process risks preempting the abstract idea of

migrating settings from one computer to the other.  The methods and processes described in Tranxition's patents are extraordinarily rudimentary and are stated at such a high level of generality that they threaten to foreclose any attempt to migrate settings between computers."  (JA0029).  As the district court explained, "the claimed invention only requires a single setting to be 'transitioned' from the old computer to a new computer."  *Id*.  In other words, "Tranxition claims a patent over any method that locates configuration settings, makes a list of settings to change, and then applies one of those settings to the new system."  *Id*. Accordingly, the district court concluded that "[t]he potential preemptive effect is sweeping."  *Id*.

Lastly, the district court blinked away Tranxition's argument that invalidity under Section 101 must be proven by clear and convincing evidence on summary judgment.  (*See* JA0008-9).  In so ruling, the district court noted that "the Federal Circuit has explained that the presumption of validity is now 'unwarranted' when 'assessing whether claims meet the demands of Section 101.'"  *Id*. (citing *Ultramercial, Inc. v. Hulu, LLC,* 772 F.3d at 720).  The application of the "clear and convincing" standard "was based on the presumption of validity" which is now "unwarranted in light of more recent Supreme Court decisions."  (JA0009). The court also reasoned that the parties had not raised any factual disputes, and so "where the question of invalidity depends not upon factual disputes, but upon how

the law applies to facts as given, the clear and convincing evidentiary standard simply does not come into play." (JA0010) (internal citations omitted).

Ultimately, the district court concluded that "Tranxition's patents are aimed at a patent-ineligible abstract idea. Neither of the patent's claims, whether read singly or in combination, state an inventive concept sufficient to satisfy the Supreme Court's test for patentability of an abstract idea under Section 101 of the Patent Act." (JA0002-3). Accordingly, the court granted Lenovo summary judgment and ruled that Tranxition's asserted patent claims are invalid. *Id.* The district court entered final judgment "in favor of Lenovo and against Tranxition on Lenovo's invalidity counterclaims" and dismissed Tranxition's claims for patent infringement with prejudice. (*See* JA0032-33).

3.    *The Markman Proceedings*

In 2014, the district court set a hearing to construe the asserted patent claims under *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). The parties disputed the meaning of several claim terms, none of which are relevant to the district court's judgment.

a.    Tranxition proposed that the term "personality object" should be construed to mean "an object containing information related to the collection of configuration settings" (JA1556), while Lenovo proposed that the term should be construed as "an object oriented programming object containing: (1) at least one

object with information about configurations settings and (2) multiple transition rules for locating configuration settings and that (3) is not a wizard or other programming module capable of reading and writing settings."    (JA0792). In adopting Lenovo's construction, the court analyzed the patents' claims, abstract, summary of the invention, and specification. (*See* JA2010).  For example, the court pointed to the teaching in the specification of multiple configuration settings on a source computing system using multiple transition rules from a personality object. (*See* JA2011).  Furthermore, the district court identified Figures 3, 6A, and column 8, lines 24-38, disclosing that a personality object has at least one object with information about configuration settings.  *Id*.  Moreover, the district court relied on the prosecution history of the parent 09/300862 application where the applicant expressly distinguished the claimed "personality object" from the "wizard" programming module to overcome a rejection based on the *Hunter* reference.  .). (JA2010-24, citing 2-27-01 amendment and response No. 09/300862 at 25-26). Specifically, the examiner rejected all claims in view of the *Hunter* reference, which the examiner found disclosed a "wizard" for transferring settings. (*See* JA0843).  To overcome this rejection, the applicant argued that "the wizard 38 is a software program module . . ." and not a "software object" and therefore disclaimed a "personality object" that includes a settings migration wizard program module.  (*See* JA0886-87).

b.    For the "extraction plan" term in the '877 patent, Tranxition proposed its plain and ordinary meaning. (JA1550). In response, Lenovo proposed "a plan for extracting configuration settings that includes a full list of identity units to be located, an exclusion list, and an inclusion list." (JA0787). The court adopted Lenovo's construction, reasoning that the specification teaches this exact construction. (JA2009).

c.    For the "value" term in the '766 patent, Tranxition proposed that it should be construed as "the data stored in a variable or constant." (JA1543). In response, Lenovo proposed "the data stored in a variable or constant that is distinct from location, name, and format." (JA0783). The court adopted Lenovo's construction, noting that "the term 'value' is claimed separately from the location, name, and format." (JA2010). The court "also considered plaintiff's statement [] that although value and format, location and name are related, they are in fact different." (JA2010).

d.    For the term "manipulating at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system" in the '766 patent, Tranxition proposed its plain and ordinary meaning. (JA1545). During the *Markman* hearing, Tranxition argued that this "manipulating" step was the novel feature of the claims. Specifically, Tranxition

argued that "manipulation" did not simply mean "moving" the configuration settings from the old computer to another:

> [T]hat original configuration setting is sitting in the registry of the source computer. It's sitting there. And *we're not just trying to move it over. That's old technology.* If you actually moved it over, it wouldn't work. It wouldn't work because the new computer, the target computer, may have a different sense of how to translate it or may not understand what it is.

(*See* JA1830) (emphasis added). During prosecution, however, Tranxition argued that the "manipulating" step was not new and persons skilled in the art would readily understand how to "manipulate" settings at the time of filing. (JA0360).

In response, Lenovo proposed that "manipulating" should be construed in accordance with the specification as "changing at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a different location, name, value, and format used on the target computing system." (JA0783). The court adopted Lenovo's construction, pointing to the specification's teaching that claimed "manipulating" step is accomplished by "changing" the location, name, value, and format of the configuration settings. (JA2014, citing '766 patent, col. 13:38-42). The court also referenced the prosecution history, for the proposition that "manipulating" does not simply mean "transferring" or "moving." (JA2014, citing 2-5-07 office action of the '766 patent).

18

e.    Finally, for the term "transitioning/transitions one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system" in the '877 patent, Tranxition proposed the "plain and ordinary meaning." (JA1547). In response, Lenovo proposed that it should be construed in accordance with the specification as "changing one or more retrieved configuration settings from a format used on the source computing system to a different format used on the target computer system." (JA0787).

During the *Markman* hearing, Tranxition argued that "transitioning" and "manipulating" were not the same as "changing" the configuration settings. (JA1823-24). The court squarely rejected that argument, finding that the intrinsic evidence teaches that "transitioning" the configuration settings necessarily means "that one of th[e] steps down the line of the process [requires that] . . . information is *changed* so that it will work and transfer to the new computer. . ." (JA1824-25). (emphasis added). Ultimately, the court adopted Lenovo's original construction, pointing to the specification's teaching that "the manipulation at Step 54 also includes transitioning one or more configuration settings from a format used on the source computing system to a format used on the target computing system." (*See* A2009, citing '877 patent, col. 13, ll. 14-17).

In December 2015, Tranxition moved to reconsider the district court's constructions of "personality object," "extraction plan," and one additional term not disputed in the Lenovo case. (*See* JA3596-3600). For "personality object," Tranxition argued that the limitations in the construction were improper because there was no clear disavowal of claim scope during prosecution. (JA2135-40). For "extraction plan," Tranxition contended that it "cannot be defined to necessarily include a full list, an exclusion list, and an inclusion list under the doctrine of claim differentiation. (JA2112). The court declined to reconsider the constructions because "Tranxition failed to show why any of the arguments it now advances could not have been raised in the original claim construction briefing or during the two." (JA3599).

4.    *The Present Appeal*

In August 2015, Tranxition appealed the district court's summary judgment of invalidity, and "any and all claim construction orders and any orders made at the August 26-27, 2014 claim construction hearing." Three days later, Tranxition filed a separate appeal of the district court's *Markman* order. Tranxition also filed mirror-image appeals in the Novell Case.

Once the appeals were docketed, Tranxition requested consolidation of the Lenovo and Novell appeals, an order requiring Lenovo and Novell to file a single appeal brief, and permission to file expanded briefing. Fed. Cir. Dkt. No. 17. This

Court granted the motion for consolidation of the Lenovo and Novell appeals, but denied the remainder of the motion, ordering Tranxition to file a single brief and permitting Lenovo and Novell to file separate briefs. Fed Cir. Dkt. No. 26. In November 2015, despite the Court's instruction, Tranxition filed two separate opening briefs totaling over 22,000 words combined. *See* Fed. Cir. Dkt. Nos. 30 and 31. The Court *sua sponte* entered an order rejecting the briefs as "not in compliance with the rules of this court." Fed. Cir. Dkt. No. 32. On November 18, 2015, Tranxition filed a corrected opening brief. Fed. Cir. Dkt. No. 33.

In September 2015, Novell moved to dismiss Tranxition's appeal of the *Markman* order, arguing that the disputed claim constructions are not reviewable because none of the constructions impact the district court's invalidity judgment. *See* Fed. Cir. 15-1958, Dkt. No. 13 at 1. In response, Tranxition moved to dismiss Novell's cross-appeal challenging the district court's ruling that the "format" term is not indefinite. *See* Fed. Cir. 15-1958, Dkt. No. 17. This Court dismissed Novell's cross-appeal without prejudice, noting that Novell could raise its indefiniteness argument as an alternative ground for affirmance. *See* Fed. Cir. 15-1958, Dkt. No. 19 at 3. The Court also denied Novell's motion to dismiss Tranxition's claim construction appeal without prejudice to raise its arguments again in briefing. *Id.*

## SUMMARY OF THE ARGUMENT

This appeal arises from the district court's summary judgment rulings finding 40 claims in the Tranxition patents invalid under 35 U.S.C. § 101. The asserted claims are precisely the type of claims that do not recite patent-eligible subject matter under Section 101 and *Alice*. They are directed to nothing more than the abstract idea of migrating computer configuration settings from one computer to another. The patents readily admit that computer users have been manually migrating these settings for years, and the claimed processes achieve a faster, more accurate migration of the computer settings—the expected result of using a general purpose computer. Some asserted claims, in fact, could be performed entirely by a human "by hand." Other claims recite generic computer structures, like a "source computing system" and "target computing system," and the patents acknowledge that no specialized hardware or software is needed to perform the claims. At bottom, the asserted claims present textbook examples of the principle that a "mere instruction to implement an abstract idea on a computer . . . cannot impart patent eligibility." *Alice*, 134 S. Ct. at 2358. The district court correctly applied Section 101 and invalidated the claims.

Tranxition argues that the district court erred, nonetheless, in holding that the asserted claims are invalid because it allegedly misunderstood the purpose of the patents, improperly dismissed certain claim limitations as supplying generic

computer functions, and contravened examples from the United States Patent and Trademark Office's ("USPTO") Examination Guidelines.   But Tranxition's arguments impermissibly rely on unclaimed features in the specification and a self-serving declaration from the named inventor.   They also ignore the fact that computer users have been migrating computer settings manually since the advent of computer systems.   Finally, Tranxition's reliance on the USTPO guidelines is misplaced, as that argument was not raised before the district court and those examples have no force of law and are merely intended to guide examiners during prosecution.

Seeking to side step the actual invalidity controversy on appeal, Tranxition raises extraneous claim construction arguments, none of which are relevant to the district court's invalidity ruling.   Tranxition did not previously argue that the district court's *Markman* rulings would change the Section 101 invalidity analysis and this argument should be considered waived.   Even if it is not waived, the invalidity determination before this Court does not require resolution of any claim interpretation issues.   Tranxition cannot show that affirmance or reversal of the claim construction rulings would affect the invalidity judgment on Lenovo's invalidity counterclaims.   Thus, the Court should decline to address the claim construction issues that are not properly before the Court at this time.

Even if Tranxition's claim construction arguments were reviewable, they

should be rejected because the district court's constructions of the terms "personality object," "extraction plan," "value," "manipulating . . . and "transitioning . . . are each properly supported by the claim language, the specification, and the prosecution history.  Rather than articulating specific issues with the district court's reasoning, Tranxition reargues its claim construction positions on appeal and presses a number of new arguments.  Tranxition has failed to identify any legal error in the district court's *Markman* analysis, and the claim constructions should be affirmed.

## STANDARD OF REVIEW

This Court reviews the grant of summary judgment under the law of the regional circuit.  *Charles Mach. Works, Inc. v. Vermeer Mfg. Co.*, 723 F.3d 1376, 1378 (Fed. Cir. 2013).  The Ninth Circuit reviews the grant of summary judgment de novo.  *Leever v. Carson City*, 360 F.3d 1014, 1017 (9th Cir. 2004).  Accordingly, the Court reapplies the standard applied by the district court.  *See Bos. Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361 (Fed. Cir. 2011).  In the Ninth Circuit, "[a] grant of summary judgment is appropriate when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing FED. R. CIV. P. 56(a)).  "An issue of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party."

*Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (internal quotation marks omitted). Questions of Section 101 invalidity are reviewed *de novo*. *In re BRCA1– and BRCA2–Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 759 (Fed. Cir. 2014).

Whether this Court has jurisdiction to adjudicate a particular appeal is a question of law. The burden of persuasion falls on the appellant to establish whether the Court has the jurisdiction to review the issue. *See Palmer v. Barram*, 184 F.3d 1373, 1377 (Fed. Cir. 1999). Here, Tranxition carries "the burden of persuasion . . . to establish that [the Court] indeed possess[es] the jurisdiction [to review the district court's *Markman* order]." *Id.*

Assuming this Court has jurisdiction to consider the *Markman* rulings, this Court reviews the claim constructions *de novo* "[b]ecause there is no issue here as to extrinsic evidence . . ." *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1280 (Fed. Cir. 2015); *see also Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015).

## ARGUMENT

## I.    THE ASSERTED PATENT CLAIMS COVER PATENT-INELIGIBLE SUBJECT MATTER.

The claims at issue relate to an abstract idea of migrating computer settings from an old computer to a new computer. This method has been performed

manually by computer users for decades. The claims themselves are comprised "of little more than synonyms for generic conventional computer processing steps" (JA0020), precisely the type of broad computer-implemented claims the Supreme Court struck down in *Alice*.

## A.     The Asserted Patent Claims Cover an Abstract Idea.

Tranxition fails to identify any legal error in the district court's abstract idea analysis. All of the asserted claims are drawn to a patent-ineligible abstract idea of migrating computer settings from one computer to another. (JA0011). The purpose of the patents is "to move a user's custom configuration settings from one computer to another." *Id.* The concept of migrating configuration settings, however, "was a fundamental and widely-utilized process that was performed manually at the time of the invention." *Id.* As the district court recognized, "if one looks past the dense language in the patents, it is apparent that the patents describe in very generic and abstract terms the process of transferring settings between computers." *Id.* Indeed, the claims contain nothing more than "a sweeping general description of the migration process—it is devoid of any detail describing how Tranxition's claimed invention works." *Id.* For example, claim 1 "describes the steps *any* user would take to perform the abstract idea of "migrating" settings between computers." (JA0012) (emphasis added). Thus, "[c]laim 1 is the very

essence of an 'ordered combination of steps'. . . having no particular concrete or tangible form." (JA0012-13, citing *Ultramercial*, 772 F.3d at 715).

>   **1.**    *The district court's abstract idea formulation captures the purpose of the patent claims.*

Tranxition does not contest that the concept of migrating computer configuration settings is an abstract idea. *See* Br. 38 ("far from claiming the abstract idea of migrating settings . . ."). Instead, Tranxition quibbles over the district court's precise formulation of the abstract idea. Br. 46. Specifically, Tranxition contends that the district court "injected an unclaimed abstract idea" into the claims by using the word "migration," a term that does not appear in the claims, rather than the word "transition," a term that does appear in the claims. Br. 36. This argument fails for two reasons.

First, the district court's opinion does not rest solely on "migration" in discussing the patents' abstract concept. Indeed, the court found that the "purpose" of the claims is "to move a user's custom configuration settings from one computer to another." (JA0011). Furthermore, the court explained that "the patents describe in very generic and abstract terms the process of transferring settings between computers." *Id.* Regardless of the precise formulation of the abstract idea, the district court appropriately analyzed the purpose of the claims to determine the basic concept behind them.

Second, there is no requirement that an abstract idea be mechanically described verbatim throughout the Section 101 analysis. Indeed, simply to make their opinions more readable and understandable, courts use different language to describe the same abstract concept, or may use short-hand formulations later in their opinions. *See Accenture Global Services GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013). To this end, the district court properly cut through the "typically convoluted language—'patent-ese'—to obfuscate the general purpose and real essence of [the claims]." *In re TLI Commcn's LLC Patent Litig.*, 87 F. Supp. 3d 773, 783 (E.D. Va. 2015).

This Court reached a similar conclusion in *Dealertrack v. Huber*, affirming the district court's summary judgment of invalidity under Section 101. 674 F.3d 1315, 1334-35 (Fed. Cir. 2012). In their "simplest form," the claims in *Dealertrack* were directed to "receiving data from one source," "selectively forwarding the data," and "forwarding reply data to the first source." *Id.* at 1333. Rather than reciting the precise language of the claims, the court characterized this process as the "basic concept" of "processing information through a clearinghouse" and held the claims "invalid as being directed to an abstract idea preemptive of a fundamental concept or idea that would foreclose innovation in

this area." *Id.*    The idea underlying Tranxition's asserted claims is no less abstract.[4]

### 2.    *The district court's analysis of manual migration is consistent with the intrinsic evidence.*

Tranxition's contention that the district court did not "understand" the concept of "manual" migration is belied by a plain reading of the record.  Br. 39-40.

First, Tranxition argues that there is "no evidence" that the concept of "manual migration" was "well-known, conventional, and routine."  Br. 40.  But it cannot reasonably be disputed that "prior to the patents, users were engaged in a manual migration process involving at least one configuration setting."  (JA0015).  The patents explain that, at the time of invention, "[a]ll but the most rudimentary pieces of 'the migration process' [were] done by hand,"  (JA0082, col. 2, ll. 6-8) and that "technology changes very quickly, [and] it is *very common* to replace an old computer system every few years with a new computing system."  (JA0082, col. 1, ll. 24-26) (emphasis added).  Tranxition provides no persuasive evidence to

---

[4] Notably, Tranxition does not dispute that claim 30 is directed to an abstract idea.  To be sure, the district court did not rely "on the concept of migration" (Br. 35) in finding claim 30 invalid—instead, the district court found that the claim is directed at the "abstract idea of gathering and organizing data."  (JA0018).  And Tranxition raises no argument that the district court erred in its abstract idea analysis for claim 30.  Therefore, that argument should be considered waived and the ruling on this claim must be affirmed.

rebut the patent's teachings that manual migration was routine and conventional at the time of filing. To the contrary, Tranxition described the prior art manual migration process as "no easy and efficient way to collect and store the different kinds of configuration settings per personality after they were located." (*See* JA0004). Thus, the district court did not "mistakenly infer" that manual migration was a long-standing, routine activity. Br. 40.

Second, Tranxition contends that the district court mistakenly assumed that "the description of manual migration in the patents [was] the same methods and systems being claimed." Br. 40. Quite the opposite, the district court recognized that the patents touted the automatic nature of claimed methods and systems to overcome the problems with the prior art: "[t]he patents aim to address this problem by '*automatically* determin[ing] configuration settings customized by a user or network administrator on a[n] old computer system,'" and "providing 'an *automatic* migration of configuration settings from an old computer system to a new computing system *without using a time consuming manual migration process*.'" (JA0004) (emphasis added). Likewise, the district court recognized that the "claims that make up the patent[s] describe how the invention achieves *automatic* migration." *Id.* Perhaps more important, the district court expressly described the claimed subject matter as encompassing an "automatic" process, "without using a time consuming manual migration process," (JA0023), a

statement that directly contravenes Tranxition's claim that the district court believed that the claims covered a manual migration process.

Third, Tranxition argues that "manual performance" is "increasingly a red herring" and that "manual performance" is not a "touchstone" of an abstract idea. Br. 42. But courts have routinely invalidated claims to an abstract concept, particularly when the concept was well-known and the steps could be performed by "a human using pen and paper" or were the equivalent of "human mental work." *See Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1007 (Fed. Cir. 2014); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) ("[M]ethods which can be performed mentally, or which are the equivalent of human mental work, are unpatentable abstract ideas.").

For example, in *CyberSource*, this Court found that claims directed to a process for verifying the validity of credit card transactions over the Internet were invalid under Section 101. *Id.* at 1367-69. The Court reasoned that all three steps in method claim 3 ((1) obtaining information about credit cards, (2) constructing a map of credit card numbers, and (3) utilizing the map to determine if the transaction is valid) could all "be performed in the human mind, or by a human using a pen and paper." *Id.* at 1372-73. The Court further observed that method claim 3 "does not limit its scope to any particular fraud detection algorithm, . . . [r]ather, the broad scope of claim 3 extends to essentially any method of detecting

credit card fraud based on information relating past transactions to a particular 'Internet address,' even methods that can be performed in the human mind."

As another example, in *Content Extraction*, this court affirmed the invalidity of patent claims generally reciting a method of extracting data from documents, recognizing specific information, and storing that information in memory. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014), *cert. denied*, 136 S. Ct. 119 (2015).   In holding that the Asserted Patents were directed to an abstract idea, the Court reasoned that "[appellant's] claims are drawn to the basic concept of data recognition and storage" and "[t]he concept of data collection, recognition, and storage is undisputedly well-known.   Indeed, humans have always performed these functions." *Id.* at 1347.

Likewise, in *buySAFE, Inc. v. Google, Inc*., 765 F.3d 1350 (Fed. Cir. 2014), this Court affirmed the invalidity of patents generally relating "to the provision of a guaranty service for online transactions." *Id.*   The claims explicitly required numerous computer-related components: "at least one computer application program running on a computer of a safe transaction service provider," an "online commercial transaction," and a "computer network." *Id*. at 1352.  Despite these computer-related limitations, the court explained that "[t]he claims are squarely about creating a contractual relationship—a transaction performance guaranty—

that is beyond question of ancient lineage . . . This kind of narrowing of such long-familiar commercial transactions does not make the idea non-abstract for section 101 purposes." *Id.* at 1355 (internal citations and quotations omitted); *see also Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.,* No. 2015-1415, 2016 WL 362415, at *7 (Fed. Cir. Jan. 20, 2016) (invalidating claims directed to systems and methods for assisting borrowers to obtain loans reasoning that the claims "could all be performed by humans without a computer.").

### 3. *PTO Guidelines are not relevant to this Court's invalidity determination.*

For the first time on appeal, Tranxition argues that United States Patent & Trademark Office 2014 Interim Eligibility Guidance mandates reversal.  Br. 44. As a preliminary matter, this argument was not raised before the district court and should be considered waived.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009); *Sage Prods. Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1426 (Fed. Cir. 1997).  In any event, Tranxition's reliance on the USTPO's examination guidelines is misplaced.  The Guidelines do not constitute substantive rulemaking and hence do not have the force and effect of law.  *See* MPEP 2107 ("The Guidelines do not constitute substantive rulemaking and hence do not have the force and effect of law."); *see also Mikkilineni v. Stoll*, 410 F. App'x 311, 313 (Fed. Cir. 2010) ("we conclude that the Interim Guidelines are interpretive, rather than substantive").  Rather, the examples are "intended to *assist examiners* in

applying the 2014 Interim Patent Eligibility Guidance *during the patent examination process*." *See* 2014 Interim Guidance on Subject Matter Eligibility (emphasis added). In fact, Tranxition recognizes that the Guidelines are "for USPTO personnel to use when determining subject matter eligibility . . ." Br. 44.

Even if it were proper to consider the USPTO examples, they support rather than refute the district court's invalidity determination. In example 1, the claimed invention "is directed towards physically isolating a received communication on a memory sector and extracting malicious code from that communication to create a sanitized communication in a new data file" and "performing isolation and eradication of computer viruses, worms, and other malicious code, a concept inextricably tied to computer technology . . ." Br. 44 n. 8 (citing USPTO Guidance, example 1). Tranxition's claims, in contrast, are directed to an abstract method for performing a migration of computer settings and gathering and reorganizing data. This "concept of data collection, recognition, and storage is undisputedly well-known." *Content Extraction*, 776 F.3d at 1347. As a result, Tranxition's claimed invention is directed at a practice that was well-known, conventional, and routine at the time of the invention, and is therefore not directed to patent-eligible subject matter. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015).

**B.    The Patent Claims Do Not Contain an Inventive Concept.**

    **1.    *The district court properly analyzed the claims as an ordered combination.***

Tranxition's contention that the district court failed to consider the claims "as an ordered combination" (Br. 46) has no support in the record. As Tranxition acknowledges, the district court correctly stated the controlling law for the second *Mayo/Alice* step. Br. 46. Then the district court properly examined the claim elements "individually and as an ordered combination," concluding that they "fail to state an additional feature that transforms the abstract idea of migrating settings from one computer to another into a patent eligible invention." (JA0019).

For the '877 patent, the court carefully examined the steps in each claim, finding them "abstract descriptions of rudimentary computer operations that add 'nothing of practical significance to the underlying abstract idea.'" (JA0019) (citing *See Ultramercial*, 772 F.3d at 716). For instance, "providing configuration information about configuration settings" constitutes nothing more than "data gathering," one of the most basic functions of a generic computer. *See e.g., Ultramercial*, 772 F.3d at 716 ("[T]he steps of consulting and updating an activity log represent insignificant 'data-gathering steps,' . . . and thus add nothing of practical significance to the underlying abstract idea.") (citations omitted); *Content Extraction*, 776 F.3d at 1347 (explaining that "the concept of *data collection*, recognition, and storage is undisputedly well-known. Indeed, humans have always

performed these functions."). Likewise, the "generating an extraction plan" limitation essentially describes "making a list" of instructions. *See Allvoice Devs. US, LLC v. Microsoft Corp.*, No. 2014-1258, 2015 U.S. App. LEXIS 8476 (Fed. Cir. May 22, 2015) (invalidating patent claims under Section 101 that merely recited a set of software instructions). The other claim limitations, "extracting," "retrieving," and "transitioning," similarly recite "conventional computer task[s]" that are insufficient to add an inventive concept to the claims. (JA0019) ("extraction of . . . information amounts to manipulating data based on inputs from the user, which is yet another conventional computer task"). At bottom, the claims are comprised "of little more than synonyms for generic conventional computer processing steps"—precisely the type of broad and non-specific claims that the Supreme Court cautioned against in *Alice*, 134 S. Ct. 2357 ("Simply appending conventional steps, specified at a high level of generality [is] not enough to supply an inventive concept.").

Tranxition argues that the district court "arbitrarily boil[ed] down the ['877 patent] claims to something generic" and "conclusorily likened the step[s] to 'data gathering.'" Br. 47. But Tranxition offers no explanation how the court's analysis is inaccurate or "undercut by its own claim construction ruling." Br. 47. Tranxition's silence only highlights its inability to identify any "meaningful limitations" that impart patent eligibility to the claims. *Id.* Tranxition attempts to

analogize to *Smartflash v. Apple* (Br. 49), but that opinion does not help Tranxition. In *Smartflash*, the claims addressed "specific ways of managing access to digital content data based on payment validation through storage and retrieval of use status data and use rules in distinct memory types and evaluating the use data according to the use rules." *Smartflash LLC v. Apple Inc.*, No. 6:13CV447-JRG-KNM, 2015 WL 661174, at *9 (E.D. Tex. Feb. 13, 2015). In contrast, Tranxition's claims are "entirely devoid of *any detail* about how the invention works" (JA0019) (emphasis added) and provide no "practical assurance" that the claims are anything "more than a drafting effort designed to monopolize the [abstract idea] itself." *Alice*, 134 S. Ct. at 2358.

Next, Tranxition attacks the district court's analysis of dependent claims 2-12 and 15 of the '877 patent, arguing that those claims "add greater specificity to Claim 1, detailing a specific implementation, settings to be transitioned, and types of settings." Br. 50. But Claim 2 discloses "the method of claim 1 where the provided configuration information is stored in a personality object." And claims 3-10 disclose the types of data that could be stored in this "personality object," including user preferences, email settings, and application of configuration information. . (JA0090, col. 17, ll. 65-67, col. 18, ll. 1-23). Similarly, claim 11 describes a generic installation, claim 12 describes a situation where no settings are transferred, and claim 15 describes another generic list of "configuration settings to

be extracted." (JA0090, col. 18, ll. 23-41). These claims, read as an ordered combination, disclose the creation of a list of where configuration information can be found, and grouping that information as a collection of data (i.e., an "object") that the user can manipulate through software. (JA0024). As in *Alice*, the limitations that Tranxition argues adds "greater specificity" are "purely functional and generic." *See Alice*, 134 S.Ct at 2360 (the allegedly "specific computerized functions" are included in nearly every computer and did not recite meaningful limitations). Much like claim 1, dependent claims 2-12 and 15 fail to state an inventive concept because they merely describe in generic, abstract terms how to perform the first steps in the migration process—*i.e.*, locate user settings to transfer and collect that information for later use—on a generic computer. *Id.* at 2358 (the addition of an instruction to implement an abstract idea on a computer cannot impart patent eligibility).

Tranxition's computer system claims (16-26 and 29), which correspond to the method claims (1, 2, 4-12, and 15), are also fatally flawed because they also fail to disclose any inventive concept. Tranxition argues that the district court erred in analyzing claims 16-26 and 29 by "selectively focusing on claim terms rather than the [sic] considering the entire claim and all of its elements as an ordered combination." Br. 50. But Tranxition, once again, does not identify which claim terms the district court supposedly overlooked or over-emphasized. And

38

although Tranxition claims that the district court "errantly concluded that claim 16 adds nothing more than 'generic applications,'" (Br. 51) (*e.g.*, "a user interface application," "an extraction application," and a "transition application"), Tranxition fails to explain how those applications are specialized. In fact, the district court's conclusion is supported by the specification, which teaches that the claimed systems can employ any type of hardware or software. (JA0090, col. 17, ll. 5-10) ("The programs, processes, methods and systems described herein are not related or limited to any particular type of computer or network system…"); *id.* ("Various types of general purpose or specialized computer systems may be used with or perform operations in accordance with the teachings described herein."). Disclosure of these generic applications in the system claims does not add any meaningful, practical limitation on an otherwise abstract idea of the method claims. *See Alice*, 134 S. Ct. at 2360 ("[T]he system claims recite a handful of generic computer components configured to implement the same [abstract] idea" as the method claims).

Tranxition argues that claim 30 is like the claims at issue in *DataTern, Inc. v. Microstrategy, Inc.,* No. CV 11-11970-FDS, 2015 WL 5190715, at *8 (D. Mass. Sept. 4, 2015). In that case, the district court reasoned that "object-oriented programs exist only in the realm of computers, and relational databases are utilized primarily, if not exclusively, on computers." Br. 51. But claim 30 is not directed

at mapping between an object-oriented program and a relational database. Rather, it is directed to the abstract idea of "information for locating" several kinds of "configuration information" on a generic "computer-readable medium." (JA0091, col. 20, ll. 15-34).

With respect to the '766 patent, Tranxition does not seriously challenge the district court's ruling that the asserted claims do not supply an inventive concept. Instead, Tranxition offers a single, conclusory sentence: the district court "focused solely on the verbs in the claims, ignoring the claims as a whole or as an ordered combination." Br. 52. Given that Tranxition failed to articulate a fulsome argument for the '766 patent claims, the issue should be considered waived. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006). Even if not waived, Tranxition's argument is wrong on the merits. In assessing the invalidity of the '766 patent, the district court did much more than focus solely on the verbs of the claims. Rather, it analyzed the complete elements of independent claims and concluded they are nothing more than routine, conventional processing steps that any generic computer can perform. (JA0026-27); s*ee also CyberSource*, 654 F.3d at 1375 (claims that recited "mere manipulation or reorganization of data" were not sufficient to confer patent eligibility). Similarly, the configuration settings in independent claim 1 to be "manipulated" (i.e., "a location, a name, a value, and a format") are not inventive either because these properties were known

at the time of filing.  (JA0082, col. 2, ll. 13-20). (emphasis added).[5]

### 2.    *DDR Holdings Is Distinguishable.*

Tranxition's argument for patent eligibility hinges on its argument that the patents claim a "computer solution" to a "computer problem," like the claims in *DDR Holdings*.  S*ee* Br. 8, 10, 16, 34, 36, 53, 59.  But Tranxition's claims are not "necessarily rooted in computer technology" in the same sense as *DDR Holdings*, where a server computer was specially programmed to display a hybrid web page.  Although the problem of transferring user settings from one computer to another did not arise until computers were invented, the nature of the process of the claims is a "human one."  (JA0021).  The patents themselves explain that migration is a "manual" process predating the invention.  (JA0082, col. 2, ll. 1-20).  The patents then claim to perform the manual migration process "automatically."  (JA0082, col. 2, ll. 38-44).

---

[5] Independent claim 42 fares no better because it adds nothing more than the association of "configuration settings" with a "first version" of a program on the source computer and a "second version" of the program on the target computer. Reciting that the settings are manipulated between "versions" of a "program" is highly general and no more inventive than simply manipulating the settings using a computer.  *See Gametek*, 2014 WL 1665090 at *4, 6.  Similarly, the dependent claims of the '766 patent also fail to disclose an inventive concept.  For example, Claims 5-11 and 15 recite various types of "configuration settings" such as "browser configuration settings," "browser favorites," and "browser bookmarks." But this "configuration information" supplies no inventive concept; indeed, Tranxition does not purport to invent the claimed configuration settings. (*See* JA2220, JA2232-34).

The activity at issue in *DDR Holdings*, by contrast, could only be performed by a computer. That process was "necessarily rooted in computer technology" because there was no manual process that could achieve the same result. In other words, there was no way for a person to display a hybrid website. *See e.g., Intellectual Ventures I*, 792 F.3d at 1371 (Fed. Cir. 2015) ("The patent claims here do not address problems unique to the Internet, so *DDR* has no applicability."); *DDR Holdings*, 773 F.3d at 1258 (cautioning that "not all claims purporting to address Internet-centric challenges are eligible for patent.").

Tranxition attempts to analogize its case to *DDR Holdings,* suggesting that the asserted claims recite specific ways to automate the transition of configuration settings on a source computer to a target computer. Br. 53. But that argument does not hold water. First, none of the claims explicitly require performing the alleged invention "automatically." And even if they did, simply automating with a computer to improve efficiency for something previously done manually is insufficient to confer patent eligibility. *See Alice*, 134 S. Ct. at 2359-60 (the use of a computer to obtain data, adjust account balances, and issue automated instructions was purely conventional and did not transform an abstract idea into a patent-eligible idea); *see also OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363-64 (Fed. Cir. 2015), *cert. denied*, 2015 WL 7258645 (U.S. 2015) (finding that automation to make more efficient fundamental price-optimization

methods was not sufficient for patent eligibility).  Although Tranxition claims that it "improved an existing process" (Br. 53), the only advantage of the automated process pertains to improved speed and accuracy compared to the previously known manual processes.. (JA0082, col. 2, ll. 39-44).  And it is well-established that "[m]erely using a computer to perform more efficiently what could otherwise be accomplished manually does not confer patent-eligibility." *buySAFE*, 964 F. Supp. 2d 331, 336 (D. Del. 2013) (citation omitted).

Tranxition's automated process is also different from the *DDR Holding* claims because it operates in the normal, expected manner as the manual process. In *DDR Holdings*, the court relied on the fact that the claimed invention "overrides the routine and conventional sequence of events ordinarily triggered by the click of a hyperlink," so the computer network no longer operates "in its normal, expected manner." *Id*. at 1258-59.  There is no similar limitation in Tranxition's claims. Nothing in the claims "overrides the routine and conventional sequence of events" ordinarily accomplished through a manual migration process.  Tranxition's claims to mimicking a "personality" of one computer on another computer reflect entirely "normal" and "expected" processing—nothing at all like the claims held patent-eligible in *DDR Holdings*.

Tranxition argues that the district court "ignore[d] the actual claim language" and "never addressed how *the actual claim language* could be

performed 'manually' . . ." *See* Br. 52, 54 (emphasis original). But it is actually Tranxition that ignores the claim language and instead relies on unclaimed features for its argument. For example, Tranxition points to Ms. Kelly Mackin's declaration to recite that "Tranxition's Asserted Patents enable ordinary users to accurately transition any number, including thousands, of settings, across different platforms." *See* Br. 8, 13. But the claims only require transitioning or manipulating "one or more" (or "at least one") setting—not hundreds or thousands of settings. Indeed, "it may be true that a human could not migrate ten thousand settings by hand, but the asserted claims do not require that level of complexity." (*See* JA0015); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) (In assessing invalidity under Section 101, "one must focus on the claims . . . because a claim may 'preempt' only that which the claims encompass, not what is disclosed but left unclaimed.").[6] In any event, Tranxition's "relying on a computer to perform routine tasks more quickly or more accurately is insufficient to render the claims patent eligible." *OIP Techs.*, 788 F.3d at 1363.

This Court's recent decision in *Planet Bingo, LLC v. VKGS LLC* is directly on point. In *Planet Bingo*, the Court affirmed summary judgment that claims to a

---

[6] Tranxition attempts to distinguish the district court's reading of claim 1 as being limited to "only one setting" instead of "at least one." Br. 56. That is a red herring: independent claims 1 and 16 of the '877 patent only require transitioning or manipulating "one or more" (or "at least one") setting—not "hundreds" or "thousands" of settings.

computerized Bingo game were patent ineligible.  576 F. App'x 1005, 1007, 1009 (Fed. Cir. 2014) (non-precedential).  The patentee argued that "in real world use, literally thousands, if not millions of preselected Bingo numbers are handled by the claimed computer program, making it impossible for the invention to be carried out manually."  *Id.* at 1008 (internal quotation marks omitted).  This Court rejected that argument for patent eligibility because "[a]t most, the claims require two sets of Bingo numbers, a player, and a manager"—not thousands or millions of numbers.  *Id.* (internal quotation marks omitted).  Tranxition's argument about solving a "computer problem" by transitioning "thousands of settings" suffers from the same flaw of tying patent eligibility to unclaimed elements.

### 3.    *There Was No Genuine Dispute of Material Fact Regarding Migration.*

Tranxition argues that inventor Mackin's declaration establishes genuine issues of material fact to preclude summary judgment.  Br. 54.  Specifically, Tranxition argues that the district court ignored facts from the declaration demonstrating that the asserted claims were not "well-known, conventional, and routine" at the time of the invention.  Br. 54.  But the district court correctly discounted this evidence because "the analysis of patent eligibility under Section 101 must focus on the language of the claims themselves, not additional detail set forth in the specification, or the inventor's testimony about the meaning of the patent claims."  (JA0027) (citing *Dealertrack, Inc. v. Huber,* 674 F.3d 1315, 1334

(Fed. Cir. 2012) (instructing that a Section 101 analysis must focus on the claim language); *Howmedica Osteonics Corp. v. Wright Medical Technology, Inc*., 540 F.3d 1337, 1347 (Fed. Cir. 2008) (rejecting as irrelevant inventor testimony regarding the scope of the claim language).

Even if the Declaration were properly considered, it consists of conclusory statements like "[t]he Asserted Patents are not directed to long-standing, pre-technology, conventional tasks" and "the Asserted Patents teach a computer solution to [a computer] problem," (JA3173, ¶¶ 10-11) and irrelevant musings about unclaimed aspects of the alleged invention (the "potentially hundreds of settings present on any given computer," or that "[s]ome settings could be hidden or unreadable to anyone other than a person highly-trained in computers"). (*See* JA3175, ¶¶ 20-21). The Declaration does not provide any facts—let alone sufficient facts—to create a genuine issue regarding patent eligibility. *See Mortgage Grader*, 2016 WL 362415, at *8 (relying on the "claims and specifications of the patents-in-suit" to invalidate under Section 101 and holding that expert reports did not create a genuine dispute of material fact); s*ee also Walker Digital, LLC v. Google, Inc*., 66 F. Supp. 3d 501, 508 (D. Del. 2014) (granting summary judgment of invalidity under Section 101 because the patentee's expert's analysis was "largely conclusory," and expert's opinions that

the claims required a "computer" and were "novel and unknown" did not "save the patent's claims").

## C.    The Machine or Transformation Test Cannot Save the Claims.

Tranxition argues that the asserted patent claims are not invalid under this Court's pre-*Alice* machine-or-transformation test, but that test cannot save the claims.

First, Tranxition argues that the "data structures" in its claims satisfy the "machine" requirement, pointing to the district court's decision in *CyberSource*. Br. 59.  This is the first time Tranxition has raised this argument, and it should be considered waived.  Even on the merits, it is wrong because Tranxition's patents are "not tied to any particular novel machine or apparatus."  *Ultramercial,* 772 F.3d at 716.   To be sure, the patents expressly acknowledge that they can be performed on a "general purpose" computer.  (*See* JA0090, col. 17, ll. 5-10.).

Tranxition also relies on *In re Lowry*, an opinion from over 20 years ago, to argue that data structures are physical entities.  Br. 59-60.  That case is inapposite because in *Lowry*, the issue before the Federal Circuit was whether the claimed data structure, which was "stored" in a "memory," was properly rejected as *printed matter* under Section 102 and 103.   32 F.3d 1579, 1582-83 (Fed. Cir. 1994) (emphasis added).  The court did not address the claim in the context of the machine-or-transformation test, or in the context of being non-statutory under

Section 101 by virtue of being directed at a memory containing a stored data structure. *Id.*

Regarding the "transformation" prong, the asserted claims could be viewed as, at most, two steps: (1) manipulating data ("configuration settings") from one format to another; and (2) transferring data from one computer to another. Neither satisfies the transformation prong because "mere manipulation or reorganization of data" is not a transformation. *Cybersource*, 654 F.3d at 1375; *see also Bancorp*, 687 F.3d at 1273 (invalidating claims because they did "not transform the raw data into anything other than more data"). Similarly, in *Dealertrack*, this Court held that a process claiming "computer-aided" transfer of data between two sources fails to recite patent-eligible subject matter. 674 F.3d at 1333. Like the manipulation, reorganization, and transfer of data addressed in *CyberSource* and *Dealertrack*, the manipulation, transitioning, and transferring of "configuration settings" in this case (as variously recited in the claims) cannot satisfy the "transformation" prong. The asserted claims simply do "not transform any article to a different state or thing" and are patent ineligible. *See Ultramercial*, 772 F.3d at 717.

Claim 30 of the '877 patent also fails the machine-or-transformation test. Like claims 1 and 16, claim 30 is "not tied to any particular novel machine or apparatus, only a general purpose computer." *See, e.g., Ultramercial*, 772 F.3d at

716. Quite the opposite, claim 30 merely recites a generic "computer-readable medium," and none of the recited "configuration information" requires any "novel machine or apparatus," just a general-purpose computer. Regarding the "transformation" prong, claim 30 requires no "transformation" of the "configuration information" whatsoever. It requires only "information for locating" other information.

## D. The District Court Appropriately Found That the Asserted Claims Present Substantial Preemption Concerns.

The "abstract idea" exception to patent eligibility stems from the concern that allowing a patentee to preempt all uses of an idea—including future implementations the patentee did not disclose or invent—would "tend to impede innovation more than it would tend to promote it." *See Mayo*, 132 S. Ct. at 1293. Although the practical preemptive effect of the asserted claims (or any patent claim, for that matter) cannot be known with certainty, the preemption concern here is significant. In *Loyalty Conversion*, the court found a "broad" "preemptive effect" based on claims "largely functional in nature" that did "not provide any significant description of the particular means by which the various recited functions are performed." *Loyalty Conversion Sys. Corp. v. American Airlines, Inc.*, 66 F. Supp. 3d 829, 843 (E.D. Tex. 2014). That court worried that such claims would "preempt any subsequent specific solutions to the problem at issue." *See id.* at 845.

49

This case is analogous.   Tranxition claims the abstract idea of preparing configuration settings for transfer from one computer to another by choosing which settings to extract and transfer, extracting the desired settings from the first computer, and "transitioning" (or "manipulating") the extracted settings to a format usable by the second computer.   But the asserted claims recite only generic components—"plans," "applications," "storage devices" and the like—to implement the abstract idea.   Claim 30 of the '877 patent also poses a risk of preemption as it covers a "computer-readable medium" only having "information for locating" several kinds of "configuration information," without any limiting (or inventive) detail.

Tranxition argues that the district court relied solely on "attorney argument" in addressing the preemption concerns.   Br. 62.   But no separate preemption analysis is necessary because the patents fail the *Mayo/Alice* framework.   *Ariosa Diagnostics, Inc. v. Sequenom, Inc*., 788 F.3d 1371, 1379 (Fed. Cir. 2015) ("Where a patent's claims are deemed only to disclose patent ineligible subject matter under the *Mayo* framework, . . . preemption concerns are fully addressed and made moot.").   Nevertheless, the district court's preemption concerns were valid because "Tranxition claims a patent over any method that locates configuration settings, makes a list of settings to change, and then applies one of those settings to the new system." (JA0029).

Tranxition argues that because other patents relating to migrating settings exist, the patents do not preempt the entire field.  *See* Br. 63-64.  But "[a] patent need not . . . preempt an entire field to run afoul of § 101; instead, the question is whether the patent would risk disproportionately tying up the use of the abstract idea."  *Gametek LLC v. Zynga, Inc.,* No. 13-2546, 2014 WL 1665090, at *5 (N.D. Ca. Apr. 25, 2014) (citing *Mayo*, 132 S. Ct. at 1294).  Tranxition's patents pose an unacceptable risk and destroy the "balance" sought to be achieved by § 101 and are therefore invalid.  *See Morales v. Square*, *Inc*., 75 F. Supp. 3d. 716, 722 (W.D. Tex. 2014) ("At bottom, the principle is one of balance: patents should not foreclose more future invention than the underlying discovery could reasonably justify") (internal quotation marks and alterations omitted).

## E.  The District Court Applied the Correct Standard in Assessing Invalidity Under Section 101.

Tranxition argues that the district court's conclusion that the asserted patent claims are invalid was not supported by "clear and convincing evidence."  *See e.g*., Br. 26-30, 38-39, and 54.  Tranxition is wrong.  The district court's decision easily meets that standard of proof—but that standard is not relevant to this appeal.  Patent eligibility under Section 101 is a question of law for this Court.  *See Cybersource*, 654 F.3d at 1369.  The clear and convincing evidentiary standard "applies to questions of fact and not questions of law."  *Microsoft Corp. v. i4i Ltd. P'ship,* 131 S. Ct. 2238, 2253 (2011) (Breyer, J. concurring).  Here, the district

decided invalidity as a pure matter of law on summary judgment, finding that the record presented no disputed issues of material fact. Tranxition's repeated invocations of the "clear and convincing" standard are therefore unavailing.

## II.    THE *MARKMAN* ORDER APPEAL SHOULD BE DISMISSED FOR LACK OF JURISDICTION.

The district court's final judgment was based solely on its summary judgment ruling finding all the asserted claims invalid under Section 101. (*See* JA0002-3). Despite this procedural posture, Tranxition asks this Court to review extraneous claim construction rulings, even though Tranxition cannot show that affirmance or reversal of the claim construction rulings would affect the invalidity judgment.

The district court's *Markman* order is not reviewable because there are no claim construction issues that impact the district court's final judgment of invalidity under Section 101. The Court has previously found that where claim construction arguments have no bearing on the district court's final judgment, they are not reviewable and must be dimissed for lack of jurisdiction. *See SanDisk Corp. V. Kingston Tech. Co., Inc.*, 695 F.3d 1348, 1354 (Fed. Cir. 2012); *see also Mass. Inst. Of Tech. v. Abacus Software*, 462 F.3d 1344, 1350 (Fed. Cir. 2006) (refusing to address claim construction arguments "pertinent only to dismissed claims of invalidity" because "[a]n appeal is not an opportunity to bring before the appellate court every ruling with which one or more of the parties disagrees

without regard to whether the ruling has in any way impacted the final judgment");

*AdjustaCam, LLC v. Newegg, Inc.*, No. 2013-1665, 2015 WL 5449927, at *2 (Fed. Cir. Sept. 17, 2015) (finding that the Court had no jurisdiction over the appeal of the district court's claim construction order because the claim construction had no effect on the district court's final judgment.).

For the first time on appeal, Tranxition contends that alteration of the district court's claim constructions would somehow change the district court's invalidity judgment. Tranxition never made this argument before the district court and it should be considered waived. *See Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005). And now on appeal, Tranxition dedicates just one sentence in its opening brief in support of its argument: "claim construction and subject matter eligibility are particularly intertwined with regard to the patents-in-suit." *See* Br. 5. Tranxition's belated attempt to raise this argument on appeal in a single, conclusory sentence is insufficient to preserve the issue for the Court's consideration. *United States v. Ford Motor Co.*, 463 F.3d 1267, 1276-77 (Fed. Cir. 2006) (declining to consider an argument that was raised in three sentences in a reply brief); *see also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . "); *Advanced Magnetic Closures, Inc. v. Rome Fastener Corp.*, 607 F.3d 817, 833 (Fed. Cir. 2010) ("This court has consistently held that a party waives an

argument not raised in its opening brief."). Because Tranxition never argued that the district court's claim constructions would affect the invalidity analysis under Section 101 and even now fails to articulate how a change in those constructions would alter the invalidity judgment, this argument should not be considered for the first time on appeal.

Even if the arguments were not waived, Tranxition's *Markman* appeal should be dismissed because resolution of claim construction issues will not resolve a concrete dispute between the parties. *See Jang v. Boston Scientific Corp.*, 532 F.3d 1330, 1336 (Fed. Cir. 2008); *Broadcast Innovation, L.L.C. v. Charter Comms., Inc.*, 420 F.3d 1364, 1368 (Fed. Cir. 2005) ("the invalidity determination presently before this court does not require resolution of any issues of claim interpretation. Thus, this court declines to address the claim construction issues that are not properly before this court at this time."). To be sure, Tranxition offers no explanation of how its claim construction arguments would necessitate a reversal of the district court's invalidity judgment. Similar to the *Jang* case, there is no evidence to determine "with certainty which of the claim construction disputes actually has an effect on the [] issue." *Jang*, 532 F.3d 1337.

## III. THE DISTRICT COURT CORRECTLY CONSTRUED THE DISPUTED TERMS OF THE ASSERTED PATENT CLAIMS.

Even if the *Markman* order is reviewable, Tranxition's arguments should be rejected on the merits because they fail to stay true to the claim language or align

with the patent's description of the invention. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc).

## A.    The District Court Correctly Construed "Personality Object" by Considering Prosecution History Disclaimer.

Tranxition's primary argument on the term "personality object" is that prosecution history estoppel cannot apply because the statements were made in the parent application–not the application for the Asserted Patents. Br. 19. Tranxition failed to raise this argument below and it should not be considered for the first time on appeal. *See Fresenius USA, Inc.,* 582 F.3d at 1296.

On the merits, Tranxition provides no authority to support its argument. Rather, this Court has made clear that when the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches, narrowing the ordinary meaning of the claim congruent with the scope of the surrender. *See Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1094 (Fed. Cir. 2013). This may occur, for example, when the patentee explicitly characterizes an aspect of his invention in a specific manner to overcome prior art. *See Microsoft Corp. v. Multi–Tech Sys., Inc*., 357 F.3d 1340, 1349 (Fed. Cir. 2004).

In attempting to overcome the examiner's rejection of claims in the parent 09/300862 application in view of the Hunter reference, Tranxition unequivocally

disavowed the meaning of "personality object" by arguing that the term did not include a "wizard" software program taught by the prior art:

> At Col. 6, lines 42, Hunter specifically teaches "the wizard 38 is a software program module . . ." and not a "software object" or "object-oriented software module." Hunter does not teach, suggest, or even mention the words "object," "object-oriented object" for any programming module described. Thus, this equivalency suggested by the Examiner is not recognized in Hunter.

(JA00886-87).

Tranxition's argument is inapplicable because it was made in the parent application (Br. 19), which ignores controlling case law. This Court has found that the prosecution history of a parent application is relevant when it addresses a limitation in common with the patent-in-suit. *See Wang Labs., Inc. v. Am. Online, Inc.,* 197 F.3d 1377, 1383–84 (Fed. Cir. 1999) (Court considered statement made by patent applicant in parent application in construing claims in patent that was continuation-in-part of parent application). The district court properly construed "personality object" to capture the meaning provided in the specification and to account for Tranxition's specific disclaimer of claim scope.

## B. The District Court's Construction of "Extraction Plan" Comports with the Express Definition Supplied in the Specification.

The term "extraction plan" is not a term of art that one of ordinary skill in the art would understand outside of the context and teachings of the '877 patent. Accordingly, the term "extraction plan" should be given the meaning ascribed to it

in the specification of the '877 patent: "The Extraction plan includes a full list of identity units to be located, an exclusion list and an inclusion list." (JA0087, col. 11, ll 50-52). Thus, the district correctly construed "extraction list" consistent with this express definition provided by the specification. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996) ("The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication.").

Tranxition contends that the court's construction is wrong because it imports limitations recited in related dependent claims. Br. 30. Specifically, Tranxition contends that claim differentiation counsels against this result. The Federal Circuit has noted, however, that "claim differentiation only creates a presumption that each claim in a patent has a different scope; it is 'not a hard and fast rule of construction.'" *Kraft Goods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000). Tranxition's reliance on claim differentiation is inapplicable here because the independent claims at issue (JA0090, claims 1 and 16) have broader scopes than the dependent claims on which Tranxition focuses its claim differentiation arguments (JA0090, claims 14-15 and JA0090, claims 28-29, respectively). The court's construction of "extraction plan" does not import the narrower limitations of the dependent claims into the independent claims.

Therefore, the construction does not create the type of overlap that justifies invoking claim differentiation.

## C. The District Court's Construction of "Value" is Consistent with the Explicit Teachings of the Specification.

The district court correctly construed "value" to mean "the data stored in a variable or constant that is distinct from location, name, and format" in accordance with the teachings of the specification. For example, claim 1 of the '766 patent expressly delineates them by separately (and conjunctively) identifying "a location, a name, a value, and a format." That claim states "manipulating at least one of the extracted configuration settings from a *location, a name, a value, and a format* used on the source computing system to a *location, a name, a value, and a format* used on the target computing system . . ." (JA0261) (emphasis added). This language makes clear that "value" is intended to have a different meaning than the location, name, and format of the configuration settings.

## D. The Court Correctly Construed the "Manipulating" Term in Accordance with the Specification and Prosecution History.

The district court correctly construed the "manipulating" term to mean "changing at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, name, value, and format used on the target computing system." (JA0051). Tranxition argues that the court improperly narrowed the claim scope by

construing "manipulating" as "changing." Br. 24. But the examples in the patent teach otherwise.

For example, the specification disclosed this example in discussing the "manipulation" of the name associated with a configuration setting: "a configuration setting for a computer monitor may be stored with the *name config-monitor-old* on the source computer system. However, on the target computer system, the same configuration setting may be stored with a *name config-monitor-new*." (JA0259, col. 13, ll. 35-38). (emphasis added). This example shows that the name is changed from "config-monitor-old" to "config-monitor-new." The specification also discusses "manipulating" the location of the configuration settings: "a configuration setting may be stored in a first directory-A on the source system, and in a second directory-B, on the target system." (JA0259, col. 13, ll. 38-42). Both of these examples support the district court's construction of "manipulating" as "changing at least one of the extracted configuration settings from a location, a name, a value, and a format used on the source computing system to a location, a name, a value, and a format used on the target computing system." (*See* JA2014 at ll. 16-24). The court noted that term "manipulating" is just as broad as "changing.'" (*See* JA1824-25).

**E.    The District Court Correctly Construed the "Transitioning" Term in Accordance with the Specification and Claim Language Itself.**

The "transitioning" term was correctly construed as "(changing or changes) the arrangement of data of one or more retrieved configuration settings from a format used on the source computing system to a format used on the target computing system" (JA0051) because the specification teaches that "transitioning" the format is part of the overall "manipulation" step.    According to the specification, "[t]he manipulation at Step 54 also includes transitioning one or more configuration settings from a format used on the source computing system to a format used on the target computing system.    (JA0088, col. 13, ll. 14-17). And the patent makes clear that the operations occurring in the step are changes made to the location, name, value, and format.    Therefore, because the specification teaches that "transitioning one or more configuration settings from a format used on the source computing system to a format used on the target computing system" is part of the "manipulation" step, it must follow that this "transition" is simply a *change* in the format.

Moreover, the claim language itself requires such a construction.  The claims require transitioning "one or more of the retrieved configuration settings from a format used on the source computing system to a format used on the target computing system."   The only reason the claims include transitioning from "a format used on the source computing system to a format used on the target

computing system" is because the format is "changing." (JA0090). Thus, the only proper construction of "transitioning" is changing from one format to a different format.

## CONCLUSION

For the foregoing reasons, the district court's final judgment should be affirmed.

Dated:  February 11, 2016          Respectfully submitted,

*/s/ Fred I. Williams*
Fred I. Williams
fwilliams@akingump.com
Akin Gump Strauss Hauer & Feld LLP
600 Congress Avenue, Suite 1350
Austin, Texas 78701
Phone: (512) 499-6200
Fax:     (512) 499-6290

Todd E. Landis
tlandis@akingump.com
Eric J. Klein
eklein@akingump.com
Jay K. Tatachar
jtatachar@akingump.com
Akin Gump Strauss Hauer & Feld LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Phone: (214) 969-2800
Fax:     (214) 969-4343

Emily C. Johnson
johnsone@akingump.com
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Building
1333 New Hampshire Avenue, NW
Washington, DC  20036-1564
Phone:   (202) 887-4000
Fax:       (202) 887-4288

*Counsel for Lenovo (United States) Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of the Court of the United States Court of the Federal Circuit using the appellate CM/ECF system.   Counsel for all parties to the case are registered CM/ECF users and will be served by the CM/ECF system.


Dated:  February 11, 2016                              */s/ Emily C. Johnson*
                                                                    Emily C. Johnson

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief contains 13,546 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).  The brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type style.